1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7           FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   UNITED STATES OF AMERICA,

11             Plaintiff,                        No. CR 08-0730 WHA

12      v.

13   IVAN CERNA, et al.,                         **OMNIBUS ORDER RE**
                                                  **STAGE TWO MOTIONS**
14             Defendants.
                                            /
15

16        This RICO gang prosecution commenced in October 2008.  The Second Superseding

17   Indictment was filed on January 29, 2009.  It alleges 53 counts against 31 defendants arising

18   from alleged actions of the *Mara Salvatrucha* gang, also known as the MS-13.  Count 1 charges

19   24 defendants with a racketeering conspiracy.  Counts 2 and 3 charge the same 24 defendants

20   with conspiracy to commit murder in aid of racketeering, and conspiracy to commit assault with

21   a dangerous weapon in aid of racketeering.  Count 4 charges 21 defendants with use or

22   possession of a firearm in furtherance of a crime of violence.  The remaining 49 counts, which

23   are separate from the larger RICO conspiracy, charge a single defendant or small groups of

24   them with specific violent crimes in aid of racketeering, narcotics offenses, conspiracy to

25   commit robbery, unlicensed firearms dealing, illegal possession of a firearm by an alien, and

26   attempted exportation of stolen vehicles.

27        Due to the challenge of managing a case with so many defendants and charges, the

28   Court issued a scheduling order on March 19, 2009, to facilitate the speedy and orderly progress

of discovery and motions.  The scheduling order set a deadline of April 30, 2009, for all

**United States District Court**
For the Northern District of California

1   materials required to be disclosed by the government under Rule 16(a)(1)(A)–(F) to be

2   produced to all defendants required that any Rule 16 materials acquired thereafter by the

3   government be produced within fourteen calendar days of receipt by government counsel or its

4   agents.  The scheduling order also divided pretrial motions by types into three stages.  Stage

5   One motions were heard on June 24, 2009.  Stage One motions included the government's

6   motion for a protective order to limit the disclosure, dissemination, and use of information

7   relating to certain witnesses, and defendants' motions for the production of exculpatory and

8   impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  A companion order

9   addresses all but the *Brady* issue.

10          This omnibus order addresses all Stage Two motions.  The Stage Two motions include

11  multiple motions for bills of particulars, motions for Rule 16 discovery, motions for relief from

12  misjoinder; and motions for grand jury records, as well as a motion for disclosure of

13  confidential informants and an application to continue motion-filing dates.

**MOTIONS FOR BILLS OF PARTICULARS.**

15          All defendants jointly charged in Counts 1–4 have moved for a bill of particulars

16  regarding those counts.  In addition, seven individual defendants have filed separate motions for

17  bills of particulars.

18          Rule 7(f) provides that "[t]he court may direct the government to file a bill of

19  particulars."  The decision whether to grant a request for a bill of particulars is within the trial

20  court's discretion.  *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).  The Ninth

21  Circuit has explained that the bill of particulars serves three functions:  to inform the defendant

22  of the nature of the charges against him with sufficient precision to enable him to prepare for

23  trial; to avoid or minimize the danger of surprise at the time of trial; and to protect against

24  double jeopardy.  *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991).

25          A bill of particulars should be limited to these purposes:  "[a] defendant is not entitled to

26  know all the evidence the government intends to produce but only the theory of the

27  government's case."  *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986).  Furthermore,

28  the government may add clarity to the allegations via discovery, and "full discovery obviates

the need for a bill of particulars."  *United States v. Giese*, 597 F.2d 1170, 1180–81 (9th Cir. 1979).

Defendants seek a laundry list of additional information.  Their requests will not be reiterated in full — their joint motion alone lists seven pages of requests — but the bulk of the information defendants seek falls within the following categories:

1. The specific dates and locations at which each defendant allegedly committed the "charged offenses;"

2. Names of persons "present or listening" when defendants committed the alleged offenses;

3. All acts committed by the conspirators in addition to the "overt acts" listed in the indictment, who participated in those acts, who else was present, and the locations, dates and purposes of those acts;

4. The act by which each defendant first manifested that he or she was part of the alleged conspiracy; and the last act each defendant is charged with having committed in furtherance of the conspiracy;

5. Names of unindicted but known co-conspirators;

6. The "sources of the facts and information which forms the basis of" numerous allegations, the "names and addresses of the person or persons who provided the information;"

7. "The exact language, word or words" tending to show that they willfully or knowingly agreed to commit the crimes charged;

8. With respect to Count 4, what gun or guns were allegedly possessed or used, and whether defendants are charged in the firearms count with principal liability, aiding or abetting, or both.

For the reasons that follow, the government will be ordered to provide a limited bill of particulars to clarify ambiguities and certain excessive generalities.  The motions for bills of particulars will otherwise be denied.  It is important to note in this regard that the Court has previously found that a protective order is necessary in this matter for witness security, and the protective order will soon issue after having considered input from counsel.  Among other things, the protective order sets up an orderly schedule for the government to disclose protected information about protected witnesses.  In its bill of particulars, the government need not

disclose details protected from discovery by the protective order.  This caveat will be deemed

paramount as to the rest of this order.

With respect to Counts 1, 2, and 3, which charge 24 defendants with racketeering

conspiracy, conspiracy to commit murder in aid of racketeering, and conspiracy to commit

assault with a dangerous weapon in aid of racketeering, defendants' joint motion is **GRANTED** to

the extent that the government is ordered to provide a bill of particulars clarifying *when* each

defendant is alleged to have first joined each conspiracy, as opposed to when the conspiracies

themselves first began.  The three conspiracies in this action are alleged in the indictment to

have been in existence since "at least the late 1990s," when some defendants were just ten years

old.  Under the *Pinkerton* doctrine, once a defendant joins a conspiracy, he or she is potentially

liable for the actions of other defendants in furtherance of the conspiracy.  Without knowing

*when* they are alleged to have joined each conspiracy, defendants cannot know the universe of

conduct against which they must prepare a defense.

With respect to Count 2, which alleges conspiracy to commit murder, defendants' joint

motion is **GRANTED** to the extent that the government must provide additional details including

*who* was present at meetings where murders or attempted murders were discussed, *when* and

*where* such meetings took place, *what* was said at these meetings, and *what* each defendant

allegedly did to indicate their participation in the conspiracy.  It bears repeating that in the bill

of particulars, the government need not disclose details protected from discovery by the

protective order.

Count 4, the firearms count, is also too vague.  It currently charges 19 defendants with

using or possessing unidentified guns at an undetermined time since the "late 1990s," and it

charges each defendant with both principal liability and aiding and abetting.  Defendants cannot

prepare a defense against such vague allegations.  Unlike Counts 1–3, Count 4 is not alleged

under a theory of conspiracy liability, and the government must plead enough detail for each

defendant charged in Count 4 as if each were charged in a separate count.  Specifically, the

government must plead enough detail to fairly apprise each defendant of the incidents of

possession or use with which he is being charged.  The government need not plead the specific

**United States District Court**
For the Northern District of California

1   serial number of the guns allegedly possessed or used — but it must clarify whether each

2   defendant is charged with carrying, possessing, brandishing, or discharging a gun or guns;

3   whether each is charged with direct or constructive possession, or both; whether each is charged

4   with principal liability, aiding or abetting, or both; and, where known, the model of each

5   weapon.

6       Except as described above, defendants' joint motion is **DENIED** (Dkt. No. 444).  With the

7   above-described exceptions, the charges are adequate and the "indictment [is] neither vague nor

8   overbroad." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979).  Defendants' wish list

9   extends far beyond the purposes of a bill of particulars.  Defendants' "request for the 'when,

10  where, and how' of every act in furtherance of the conspiracy [is] equivalent to a request for

11  complete discovery of the government's evidence, which is not a purpose of the bill of

12  particulars." *Giese*, 597 F.2d at 1181.  Defendants are not now entitled to the degree of

13  evidentiary detail they seek.

14      Furthermore, the identities of witnesses and unindicted co-conspirators are closely

15  guarded in this matter for safety reasons.  The Ninth Circuit has specifically explained that the

16  following purposes generally "do not warrant a bill of particulars": (1) to obtain the names of

17  any unknown co-conspirators; (2) to determine the exact date on which the conspiracy allegedly

18  began; and (3) to delineate all other overt acts that comprised the charged activity.  *United*

19  *States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985).  With the exceptions already noted,

20  defendants' requests for all additional acts in furtherance of the alleged conspiracies, names of

21  witnesses, names of unindicted co-conspirators, dates, locations, and other similar requests are

22  inappropriate for a bill of particulars.

23      Defendant Herrera's motion for a bill of particulars is aimed at Count 10, murder in aid

24  of racketeering, in which he alone is charged.  Count 10 states:

25          On or about July 11, 2008 . . . as consideration for the receipt of,
            and as consideration for a promise and agreement to pay, anything
26          of pecuniary value from MS-13, and for the purpose of gaining
            entrance to and maintaining and increasing position in MS-13 . . .
27          the defendant Guillermo Herrera . . . together with others known
            and unknown, unlawfully, knowingly, and intentionally did
28          deliberately and with premeditation murder Victim-11, in
            violation of California Penal Code Sections 187, 188 and 189.

Defendant Herrera seeks a bill of particulars in order to narrow the government's theory of liability in two respects. *First*, he argues that the phrase "as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13" is confusing and contradictory and fails to afford him sufficient notice. This phrase, although not a model of clarity, is adequate. Indeed, it simply tracks the statutory language.[1] Granted, this language captures various possible motivations for the alleged murder — as "consideration"; for "gaining entrance" into MS-13; for "maintaining" position in it; or for "increasing" position in it. These possibilities, however, are not contradictory, as defendant claims, but rather are alternatives charged in the conjunctive. As the Supreme Court has explained, "[w]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Griffin v. United States*, 502 U.S. 46, 56–57 (1991). The government will eventually need to prove one of these alternatives, but at this stage the indictment is adequate to put defendant on notice of the charges and permit him to prepare a defense.

*Second*, defendant Herrera argues that the indictment fails to specify whether he is charged as a principal and, if so, what variant of principal liability the government will seek to prove. Count 10 alleges that defendant murdered "victim 11" "together with others known and unknown." As defendant Herrera emphasizes, under California law a defendant can be convicted of intentional homicide in certain circumstances if *he* did not personally kill the victim but an *accomplice* did — for example, if defendant shared the "murderous intent" of the killer or if the murder was "a natural and probable consequence" of a lesser offense that defendant aided and abetted. *See, e.g.*, *People v. Medina*, 46 Cal. 4th 913, 919–20 (2009); *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001).

---

[1] The statute states: "Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished . . . ." 18 U.S.C. 1959(a)(1).

United States District Court

For the Northern District of California

1     The government must provide more circumstances about the murder in Count 10.  The

2     government must specify whether defendant Herrera is charged as a principal and, if so, on

3     what variant (or variants) of principal liability the government will rely.  If he is charged with

4     aiding others who actually killed the victim, the government should identify those accomplices.

5          Defendant Cruz-Ramirez's motion for a bill of particulars requests the following

6     information:  (1) the dates each defendant joined MS-13; (2) a list of "associates" and

7     "employees" of MS-13; (3) more detail regarding the alleged "regular meetings" of the gang;

8     (4) an explanation of whether there are any differences in the conspiracies undertaken by those

9     alleged to be members of the "20th Street Clique," the "Pasadena Locos Sureños," and MS-13

10    (allegedly overlapping gangs); and (5) what gun or guns are alleged to have been possessed or

11    used by the defendants in furtherance of Counts 1–4.

12         Defendant Cruz-Ramirez's requests regarding the overlapping gang structure and for

13    additional details of the gang meetings are **DENIED**.  The indictment provides a description of

14    MS-13, the "20th Street Clique," the "Pasadena Locos Sureños," and the ways they allegedly

15    overlapped.  The indictment's lengthy introduction to the gang fairly places defendant Cruz

16    Ramirez on notice of the charges and allows him to prepare a defense.  Defendant Cruz-

17    Ramirez is also adequately on notice of the alleged nature of the RICO enterprise and the

18    conspiracy; he is not entitled to a bill of particulars with all of the government's evidentiary

19    detail regarding the gang's organization and its meetings.  Defendant Cruz-Ramirez's remaining

20    requests are similar to the requests in the joint motion and are granted to the same extent as the

21    joint motion and denied in all other respects.  For these reasons, his motion for a bill of

22    particulars is **GRANTED** to the extent described above and is otherwise **DENIED** (Dkt. No. 435).

23         Defendant Cerna seeks the following:  (1) the "journalist details" of several "regular

24    meetings" of MS-13 (including the time, place, participants and substance of discussions at

25    these meetings); (2) the names of the victims and the times of the agreements alleged in Counts

26    2–3; (3) with respect to Count 4, the particular firearms and dates on which they were used or

27    possessed.  With respect to meetings of MS-13 which the government alleges support the

28    conspiracy to commit murder charge against Cerna, the government must provide him with

**United States District Court**
For the Northern District of California

1    additional details about meetings where murders or attempted murders were discussed, as

2    described above.  With respect to Counts 2–3, the government must also clarify when Cerna is

3    alleged to have first joined each conspiracy, as opposed to when the conspiracies themselves

4    began  With respect to the possession of firearms count against Cerna, the government must

5    provide the same additional details as to Cerna as described above regarding the defendants'

6    joint motion.  Defendant Cerna's motion is otherwise **DENIED** (Dkt. No. 436).

7           Defendant Flores's motion for a bill of particulars first objects to the fragment of a

8    sentence that is located in the Second Superseding Indictment between overt acts 64 and 66.

9    This sentence fragment is hereby stricken from the indictment.  Defendant Flores additionally

10   seeks further information about three alleged overt acts in furtherance of the RICO conspiracy,

11   overt acts 66–68.  These state (Dkt. No. 194 at 19):

12              (66) On or about August 18, 2008, in the San Francisco Bay Area, California,
                Moris Flores . . . Walter Chinchilla-Linar . . . and others known and unknown,
13              drove by the home of a relative of the Witness.

14              (67) On or about August 25, 2008, in San Francisco, California, Moris Flores . . .
                and others known and unknown were in a car following the Witness as the
15              Witness rode on a bus.

16              (68) On or about August 28, 2008, in the San Francisco Bay Area, Moris Flores .
                . . sat in a car outside the Witness's home and sent a text message to the Witness
17              requesting that the Witness come out.

18
19   Defendant Flores seeks the identity of the "Witness," the identities of the "known" co-

20   participants and the exact dates and locations of these acts.  Flores's counsel states in a

21   declaration that he has received no discovery about these three acts (unlike the other overt acts

22   in which defendant Flores is named).  His motion for this additional information is **DENIED**.

23   The indictment describes the acts with sufficient particularly that defendant Flores is on notice

     of his alleged conduct.

24
25          Defendant Urias's motion for a bill of particulars is **GRANTED IN PART** and **DENIED IN**

26   **PART**.  (Dkt. No. 455).  The indictment alleges that defendant Urias and other defendants, as

     members of MS-13 (Dkt. No. 194 ¶ 18):

27
28              discussed and agreed to "tax" other gangs, drug dealers, and other
                criminals, to attack and kill actual and suspected Norteños, as
                well as actual and suspected members of other gangs, to distribute

narcotics, and to identify and retaliate against individuals who were suspected of cooperating with law enforcement.

Defendant Urias seeks "specific factual allegations" regarding the alleged discussions of "taxing" other gangs and drug dealers.  Although defendant Urias is not entitled to full evidentiary detail in a bill of particulars, his motion for a bill of particulars is **GRANTED** to the extent that with respect to Count 2, conspiracy to commit murder, the government must provide additional details about meetings where murders or attempted murders were discussed, as described above.  Urias's motion is otherwise **DENIED**.

Defendant Cesar Alvarado's motion for a bill of particulars is **DENIED** (Dkt. No. 451). Defendant Alvarado is charged in Counts 1–4 and is named in overt act 59, which states:

> On or about August 25, 2008, in San Francisco, California, Cesar Alvarado . . . discussed the "taxing" of drug dealers in the Tenderloin District with other MS-13 gang members.

He seeks further details of the alleged discussion regarding the "taxing" of drug dealers, including: the identities of the "other MS-13 gang members" with whom he allegedly discussed taxing, the identities of any others who were present; the location of the discussion, the identities of the drug dealers who were discussed, and specific statements made by defendant Alvarado and others.  The motion is **DENIED**.  The indictment alleges that defendant Alvarado participated in a specific discussion regarding a specific topic on a specific date in furtherance of a racketeering conspiracy.  Defendant Alvarado is fully on notice of the alleged act and is able to prepare a defense.

Finally, defendant Sosa's motion for a bill of particulars is **DENIED** (Dkt. No. 445). Defendant Sosa is charged with distribution or possession with intent to distribute controlled substances, and with conspiracy to do so.  The indictment alleges that she committed these acts with two other co-defendants and "others known and unknown."  Defendant Sosa seeks disclosure of the identities of these others.  She also seeks disclosure of any additional overt acts in furtherance of the conspiracy not charged in the indictment.  For the reasons explained above, these requests are denied.

The government is ordered to deliver to defendants the bills of particulars granted by this order **ON OR BEFORE SEPTEMBER 25, 2009**.

**MOTIONS FOR RELIEF FROM MISJOINDER.**

Defendants Urias, Gonzalez and Sosa each separately filed Rule 8 motions for relief from misjoinder. For the following reasons, each of these motions is **GRANTED**. Gonzalez and Sosa's trials shall each be severed from the trial of the RICO conspiracy defendants, and Urias's trial on Counts 26–34 shall be bifurcated from his separate trial on Counts 1–4.

Joinder of defendants, as opposed to offenses, is governed by Rule 8(b), which states:

> **(b) Joinder of Defendants**. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Because "[t]he goal of Rule 8(b) is to maximize trial convenience and efficiency with a minimum of prejudice . . . Rule 8(b) is construed liberally in favor of joinder." *United States v. Sarkisian*, 197 F.3d 966, 975 (9th Cir. 1999). The Ninth Circuit has described the inquiry as follows:

> [W]e have stated that "transactions" has a flexible meaning and that the existence of a "series" depends upon the degree to which the events are related. Mere factual similarity of events will not suffice. Rather, there must be some greater "logical relationship" between the occurrences. Such a logical relationship may be shown by the existence of a common plan, scheme, or conspiracy.

> A "logical relationship" may also be shown if "the common activity constitutes a substantial portion of the proof of the joined charges."

*Ibid*.

Defendant Sosa's motion for relief from misjoinder is **GRANTED** (Dkt. No. 446). Defendant Sosa is charged in Counts 26–30. These counts each charge Sosa with distribution or possession with intent to distribute controlled substances, or conspiracy to do so. Co-defendant Urias is also charged in these four counts, and three of the four counts name co-defendant Briez as well. Sosa is not charged with the RICO conspiracy. Urias *is* charged with RICO conspiracy, although Briez is not.

Sosa argues that the charges against her did not arise from the same transaction or series of transactions as the RICO conspiracy or any other counts in the indictment. At the hearing on

10

**United States District Court**
For the Northern District of California

1   August 18, 2009, she argued that she is charged with only comparatively simple narcotics

2   charges, and that except for misjoinder, hers would be a garden variety drug case.

3          This order agrees that the charges against Sosa do not bear enough of a logical

4   relationship to the RICO count.  Granted, defendant Urias (who is joined in the counts against

5   Sosa) is also charged with the RICO conspiracy at least in part due to his narcotics-related

6   activities for the RICO enterprise:  he is alleged to have distributed cocaine in furtherance of the

7   RICO conspiracy on multiple occasions (Dkt. No. 194 at 15–17).  Nevertheless, the specific

8   drug-related acts charged as "overt acts" in furtherance of the RICO conspiracy are different

9   than those charged as separate counts against defendants Sosa, Urias and Briez.

10         Defendant Sosa's motion for relief from misjoinder is **GRANTED**.  The fact that the

11  government misjoined her case does not mean that she is entitled to the same length of time to

12  prepare as those defendants who are charged with the RICO conspiracy.  The overwhelming

13  majority of the discovery produced in this action have little or no relation to the charges against

14  her.  If she were separated from the RICO conspiracy and other unrelated counts in the

15  indictment, her trial would take less than a week to complete.[2]

16         For similar reasons, defendant Urias's motion for relief from misjoinder is **GRANTED**

17  (Dkt. No. 454).  Defendant Urias shall be allowed two separate trials: one for Counts 1–4, the

18  RICO counts, and another for Counts 26–34, which each allege distribution or possession with

19  intent to distribute controlled substances, or conspiracy to do so.

20         Defendant Gonzalez is charged in Counts 43–45 and 49–53.  All of these counts allege

21  attempted exportation of stolen vehicles (different vehicles he allegedly attempted to export on

22  different dates).  He is charged in these counts with co-defendant Rodil Nochez.  These and

23  other vehicle-related counts in which he is not named, defendant Gonzalez explains, arose from

24  a sting operation that identified thefts of approximately 15 automobiles.  Gonzalez is not

25  charged in the RICO-conspiracy counts (nor is Nochez).  He argues that he was misjoined

26  because he is not alleged to have been part of the RICO conspiracy and, he claims, the sting

27  operation that resulted in the charges against him did not flow from the RICO-conspiracy

28         [2] Although their cases are slightly more complicated than Sosa's, the same is true for Gonzalez and
Urias.

11

**United States District Court**

For the Northern District of California

1    counts or fall under the umbrella of MS-13.  He further argues that severance is an inadequate

2    remedy and seeks *dismissal* of the charges against him without prejudice.

3        In *Sarkisian*, the Ninth Circuit found misjoinder due to the lack of any logical

4    relationship between charges relating to the trafficking in stolen cars and an extortion charge.

5    The decision explained that one charge did not logically flow from another and there was no

6    substantial overlap in the evidence presented for the car and extortion counts.  Instead, the "only

7    meaningful connections between the extortion count and the car counts [were] that some of the

8    same defendants were charged in both counts, and the extortion incident occurred while the car

9    scheme was ongoing." *Sarkisian*, 197 F.3d at 975.

10        It is true that, compared to *Sarkisian*, there appears to be a somewhat stronger

11    relationship between the sting operation and vehicle charges against defendants Gonzalez and

12    the alleged RICO enterprise in this case.  The indictment alleges that other defendants (Marvin

13    Carcamo, Aristedes Carcamo, Walter Palma, and Rodrigo Molina) delivered stolen vehicles in

14    furtherance of the RICO conspiracy (Dkt. No. 194 at 14).  These RICO defendants are also

15    charged, like Gonzalez, with attempted exportation of stolen vehicles.  Nevertheless, Gonzalez

16    himself is not charged in the RICO conspiracy, nor are any of the RICO defendants charged

17    with the same counts as he is.  The connection between the vehicle-related charges against

18    Gonzalez and the RICO charges is simply too attenuated.

19        *United States v. Donaway*, 447 F.2d 940 (9th Cir. 1971), also supports this result.

20    There, several defendants were joined in an indictment that alleged an extensive scheme

21    involving "fixed" horse races.  Donaway's only connection to the group was one bet on one

22    horse.  The decision explained that the government's case in chief covered more than 2,300

23    pages of transcripts, but fewer than 50 pages were relevant to Donaway.  Most of the rest dealt

24    with the other defendants and transactions involving the handling and "doping" of horses, with

25    which Donaway had no connection.  The decision therefore concluded that Donaway had been

26    prejudiced by the evidence related to the co-defendants at trial.  *Id*. at 943.

27        Although the current record in the present action does not precisely detail the proportion

28    of the overall evidence relevant to defendant Gonzalez, there is not likely to be enough

substantial overlap between the vehicle-related aspects of the RICO conspiracy and the charges against defendant Gonzalez to avoid a significant risk of prejudice to him.  Defendant Gonzalez's motion for relief from misjoinder is **GRANTED** (Dkt. No. 452).

Defendant Gonzalez's proposed remedy of *dismissal* of the counts against him must be **DENIED**.  In support of dismissal, defendant Gonzalez cites *United States v. Camiel*, 689 F.2d 31 (3rd Cir. 1982), where the Third Circuit affirmed a directed judgment of acquittal rather than severance where the defendants could not be effectively tried separately because they were all charged with the same count in a single conspiracy.  *Id.* at 39.  In contrast, defendant Gonzalez is charged with separate counts from the RICO conspiracy defendants, and severance of his trial under Rule 14(a) will be sufficient to remedy any potential problems of prejudice caused by misjoinder.

**TRIAL GROUPINGS**

At the August 18, 2009, hearing regarding Stage II motions, the Court heard argument from the parties regarding which defendants and counts should tried together, and which should be tried separately.  At the hearing, the Court requested that the parties meet and confer regarding the trial groupings, then submit a joint proposal by September 4, 2009.  The parties did not come to an agreement by this deadline, and on September 8, 2009, the Court ordered the parties to submit a joint proposal on trial groupings by September 11, 2009.  The parties again failed to reach an agreement.  The government submitted one proposal, and defendants submitted a separate joint proposal as to which some defendants only agreed in part.  After careful consideration of the oral arguments and written proposals of the parties, the Court sets the following trial schedule:

Defendants Sosa, Gonzalez, and Urias will be tried first, one at a time.  Defendant Sosa's trial will begin on January 19, 2010.  Defendant Urias's trial on the non-RICO drug counts against him — Counts 26–34 — will begin on January 25, 2010.  (He will be tried later on the RICO conspiracy counts against him.)  Defendant Gonzalez's trial will begin on February 16, 2010.

United States District Court

For the Northern District of California

1    Defendants Briez and Nochez are two other defendants who are not charged with

2    participation in the RICO conspiracy.  Defendant Briez is charged only with non-RICO drug

3    offenses.  His trial will begin on February 22, 2010.  Defendant Nochez is charged only with

4    non-RICO vehicle theft offenses.  His trial will begin on March 1, 2010.  Any motions for

5    continuances must be strictly supported by declarations, specific evidence, and cause.

6    All the parties agree that defendant Herrera should be tried last and separately from the

7    other defendants because he is charged with a capital offense.  The remaining 22 defendants are

8    all charged with RICO conspiracy, in addition to other counts.  They will be split into at least

9    two groups for trial.  The parties are ordered to meet and confer regarding how the remaining 22

10   defendants should be divided for trial, and submit a joint proposal **ON OR BEFORE SEPTEMBER**

11   **30, 2009** AT NOON.

**MOTIONS FOR DISCOVERY.**

13   Defendants Flores, Sosa and Alvarado each filed Rule 16 motions for discovery.

14   Defendant Sosa's motion for discovery seeks (1) preclusion at trial of all co-conspirator

15   statements that were not produced by the April 30, 2009, discovery deadline relating to Count

16   26 against her, alleging conspiracy to distribute controlled substances; (2) a deadline of October

17   11, 2009, for the government to provide a summary of all co-conspirator statements that it

18   intends to use at trial; and (3) preclusion of, or a summary of, all Rule 404(b) evidence.

19   The final scheduling order in this matter required the government to produce all

20   materials covered by Rule 16(a)(1)(A)–(F) by April 30, 2009, under penalty of preclusion.

21   Defendant Sosa is seeking to bar all co-conspirator statements on the theory that they should

22   have been turned over under Rule 16(a)(1)(A).  Rule 16(a)(1)(A) states (emphasis added):

23   [u]pon a defendant's request, the government must disclose to the
     defendant the substance of any relevant oral statement *made by*
24   *the defendant*, before or after arrest, in response to interrogation
     by a person the defendant knew was a government agent if the
25   government intends to use the statement at trial.

26   This order assumes without deciding that Rule 16(a)(1)(A) entitles any defendant to any

27   statement made by any *other* defendant charged in the same indictment, subject only to the

28   Jencks Act.  The issue is not in play in the present motion.  What is now in play is whether the

14

accused has a right under Rule 16(a)(1)(A) to obtain statements of co-conspirators who are *not* charged. Rule 16(a)(1)(A) does not require production of such statements. It only entitles a defendant to get his or her own statements, and even then only if the government intends to use them at trial. If the government intends to use statements of unindicted co-conspirators at trial, Rule 16(a)(1)(A) does not apply.

The only authority offered to the contrary is *United States v. Roberts*, 793 F.2d 580, 583–84 (4th Cir. 1986), which was vacated 24 years ago. *Roberts* reasoned that the statements of co-conspirators *not* intended to be government witnesses should be discoverable "statements by the defendant" under Rule 16(a)(1)(A) because they are attributable to the defendant as non-hearsay under Rule 801(d)(2)(E). Upon rehearing *en banc*, this decision was vacated on this precise point by *United States v. Roberts*, 811 F.2d 257 (4th Cir. 1987), which held:

> The plain language of Fed.R.Crim.P. 16(a)(1)(A) pertains to the discovery of statements "made by the defendant." The rule does not mention and is not intended to apply to the discovery of statements made by co-conspirators. Such statements are more properly governed by the Jencks Act, 18 U.S.C. § 3500.

*Id.* at 258–59. Although no Ninth Circuit decision on the subject has been found, several other appellate courts have reached the same conclusion as to the *en banc* decision.[3] This miscitation is disturbing. Counsel will please redouble their efforts to maintain the high standards of conduct normally prevailing in our district.

Defendant Sosa also seeks a deadline of October 11, 2009, for the government to provide two disclosures: (1) a summary of all "co-conspirator" statements it intends to use at trial; and (2) a summary of Rule 404(b) evidence. Defendant Sosa relies on Criminal Local Rule 16.1(c), which states:

> **(c) Supplemental Disclosure**. In addition to the information required by FRCrimP 16, in order to expedite the trial of the case, in accordance with a schedule established by the parties at the

---

[3] See, e.g., *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992) ("Since this court has refused to expand Rule 16 to include the statements of a co-conspirator, which is at least admissible non-hearsay, the court will not expand the rule to include statements by an unrelated suspect"); *United States v. Gaddis*, 877 F.2d 605, 610 (7th Cir. 1989) (rejecting a claim for co-conspirator statements under Rule 16 because, "[b]y its very words, Rule 16(a)(1)(A) is simply inapplicable to a document that does not contain a statement by a defendant"); *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988) (similar); *United States v. Orr*, 825 F.2d 1537, 1541 (11th Cir. 1987) (similar); *United States v. Percevault*, 490 F.2d 126, 130–31 (2d Cir. 1974) (similar).

United States District Court

For the Northern District of California

conference held pursuant to Crim. L.R. 16-1(a) or by the assigned Judge pursuant to Crim L.R. 16-1(b), the government shall disclose the following:

\*                     \*                     \*

**(3) Evidence of Other Crimes, Wrongs or Acts**.  A summary of any evidence of other crimes, wrongs or acts which the government intends to offer under FREvid 404(b), and which is supported by documentary evidence or witness statements in sufficient detail that the Court may rule on the admissibility of the proffered evidence; and

**(4) Co-conspirator's Statements**.  A summary of any statement the government intends to offer under FREvid 801(d)(2)(E) in sufficient detail that the Court may rule on the admissibility of the statement.

This motion is **DENIED** (Dkt. No. 445).  Instead, the government shall disclose pursuant to Criminal Local Rule 16.1(c)(4) its summary of co-conspirator statements **60 CALENDAR DAYS** before the commencement of trial and only then to defense teams whose clients are set for trial within the ninety-day period (and not as to any defense teams set for any later, severed trial).  In accordance with the final scheduling order, any motions to exclude co-conspirator statements shall be due **21 CALENDAR DAYS** before the final pretrial conference with oppositions due **7 CALENDAR DAYS** before the conference.  All of the restrictions placed by the protective order on protected information will apply in full to defense teams' use of the government's summary of co-conspirator statements, to the extent the summary contains protected information.

This order declines to set a deadline of October 11, 2009 for Rule 404(b) evidence. Rule 404(b) states that although evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, such evidence:

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The notice requirement of Federal Rule of Evidence 404(b) is not stringent.  The Advisory Committee Notes to the 1991 Amendments that added the notice requirement to Rule 404(b)

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   indicate that: "Other than requiring pretrial notice, no specific time limits are stated in

2   recognition that what constitutes a reasonable request or disclosure will depend largely on the

3   circumstances of each case." *See* Fed.R.Evid. 404(b) Advisory Committee's Note, 1991

4   amends. (stating purpose of requirement is to "reduce surprise and promote early resolution on

5   the issue of admissibility"). The final scheduling order requires the government to disclose all

6   proposed Rule 404(b) material at least 35 calendar days before the final pretrial conference, and

7   any motion to exclude must be filed 21 calendar days before the final pretrial conference.

8   Defendant Sosa has raised no compelling reason to change this schedule now.

9   　　　The Rule 16 motions of defendants **ALVARADO** and **FLORES** are also **GRANTED IN PART**

10   and **DENIED IN PART** (Dkt. Nos. 453, 481). Defendant Flores seeks (1) copies of any recordings

11   of statements he made during three MS-13 meetings and (2) copies of a text message he

12   allegedly sent to a witness. The text message defendant Flores seeks is referenced in "overt

13   act" 68 of the RICO-conspiracy count. The three MS-13 meetings are referenced in "overt

14   acts" 49, 50 and 54 of the RICO-conspiracy count, although the indictment does not mention

15   recordings. Defendant believes that the government may possess recordings of some or all of

16   these meetings because an ICE report turned over in discovery indicates that an informant

17   attended the meetings. The report specifically states the informant wore a recording device at

18   one of these meetings.

19   　　　Defendant Alvarado is charged in the RICO-conspiracy count and is alleged to have

20   robbed and killed a person on July 31, 2008. He seeks (1) any video recordings of the homicide

21   crime scene of the July 31, 2008, murder; (2) autopsy photographs of the victim of that

22   homicide; and (3) written or audio recordings of any statement by defendant to ICE agents

23   admitting that he is a member of MS-13. Attorney Goldrosen states in his declaration that the

24   government permitted him to inspect the autopsy photograph but refused to provide him a copy

25   of it, and that a report by SFPD officer Ganster turned over in discovery states that a video

26   recording was made of the homicide crime scene. Attorney Goldrosen further states that an

27   affidavit by ICE Agent Christopher Merendino, also turned over in discovery, indicates that

28

United States District Court

For the Northern District of California

1   defendant Alvarado admitted to ICE agents that he was a member of MS-13, but not whether

2   the agents recorded Alvarado's oral statement or took a written statement from him.

3        The materials sought by defendants Flores and Alvarado are covered by Rule 16.  The

4   government is **ORDERED** to provide defendant Alvarado with a copy of the autopsy photograph

5   and to provide any of the other materials requested by defendants Alvardo and Flores in its

6   possession, custody or control.  The government does not argue to the contrary.  Instead, the

7   government indicates that it has already provided, or made available for inspection, all

8   discoverable material in its possession relating to the July 31, 2008, murder and all statements

9   in its possession by these two defendants.  It states that, in response to defendants' requests, it

10  will look again and will turn over any additional such material that it discovers.

11                          *          *          *

12       For the sake of completeness, the Court notes that FBI Interview Report Forms, known

13  as Form 302s, do *not* qualify as Jencks Act statements unless they are either "a substantially

14  verbatim recital of an interviewed witness's oral statement and [are] prepared

15  contemporaneously with the interview or are "signed or otherwise adopted or approved by the

16  witness."  *United States v. Rewald*, 889 F.2d 836, 867-8 (9th Cir. 1989); *See* 18 U.S.C.

17  3500(e)(1)-(2).  The Court expects that the vast majority of Form 302s in this case do not

18  qualify as Jencks Act statements such that they may be withheld until the witness testifies.  *See*

19  *United States v. Diaz*, No. CR 05-0167 WHA, Dkt. No. 108.[4]  To the extent requested, the Court

20  will hold an *in camera* hearing to determine whether it falls into one of the two exceptions

21  described above.

22                  **MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMANTS.**

23       Defendant Largaespada files a motion "on behalf of all defendants" for an order

24  requiring the government (1) to identify the confidential informants identified in discovery as

25  SA-1211-SF, SA-1218-SF, and CS-06-1222710; and (2) to disclose whether it used any

26  informants other than those three (Dkt. No. 449).

27       [4] At the appeal hearing of a discovery order in an earlier RICO gang prosecution, "AUSA Anjali
28  Chaturvedi stated at the appeal hearing that FBI agents are trained to prepare Form 302 reports so that they will
    *not* qualify as 'statements' and therefore never have to be produced pursuant to the Jencks Act."  *United States
    v. Diaz*, No. CR 05-0167 WHA, Dkt. No. 108. at *5-6 (emphasis in original).

                                        18

The government has a qualified privilege to withhold informants' identities.  The purpose of the privilege is:

> the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Roviaro v. United States*, 353 U.S. 53, 59 (1957).  As *Roviaro* explained, "[t]he scope of the privilege is limited by its underlying purpose," and therefore the privilege will not apply where "the disclosure of the contents of a communication will not tend to reveal the identity of an informer" or where "the identity of the informer has been disclosed to those who would have cause to resent the communication."  *Id*. at 60.

Defendant Largaespada argues that the *Roviaro* privilege no longer applies to the identities of the government's two main informants — 1211 and 1218 — because defendants already know the identities of those two individuals.  In his motion, defendant Largaespada names the individuals whom he believes to be informants 1211 and 1218.  Defendant Largaespada, however, merely states whom he *believes* to be the two informants — with little substantiation or indication of why he believes that to be so.  He fails to establish that the identities of the two informants "have been disclosed."  In fact, defendant Largaespada explains that he might in fact have misidentified the informants because the informants were known by street names, not legal names.  Disclosure therefore *would* tend to reveal the identities of the two informants.

In the alternative, defendant Largaespada argues that the identities of these two informants must be disclosed because the informants were active participants in events at issue in this case.  *Roviaro* stated that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.  In these situations the trial court may require disclosure . . . ."  *Roviaro*, 353 U.S. at 60–61.

A defendant bears the burden of showing the need for disclosure.  He or she must show "more than a mere suspicion that the informant has information which will prove relevant and

United States District Court

For the Northern District of California

1  helpful or will be essential to a fair trial." *United States v. Henderson*, 241 F.3d 638, 645 (9th

2  Cir. 2000).  A court must consider the "particular circumstances of each case," including "the

3  crime charged, the possible defenses, the possible significance of the informer's testimony, and

4  other relevant factors." *Roviaro*, 353 U.S. at 62.  A motion to reveal an informant's identity

5  may be denied when it is supported only by allegations of counsel that a particular defense is

6  possible. *United States v. Mehciz*, 437 F.2d 145, 149 (9th Cir. 1971).  If a defendant makes a

7  "minimal threshold showing that disclosure would be relevant to at least one defense," a court is

8  required to hold an *in camera* hearing on whether to allow disclosure. *United States v. Spires*, 3

9  F.3d 1234, 1238 (9th Cir. 1993).  A defendant and his or her attorneys may be excluded from

10  such a hearing, to protect the informant's identity.

11  At the *in camera* hearing, a court balances a defendant's need for the information

12  against the government's interests.  A court should also consider "the public interest in

13  protecting the flow of information." *Spires*, 3 F.3d at 1238.  Where a defendant has made its

14  threshold showing that identification of the government's confidential informant may be

15  relevant and helpful to a possible defense at trial, a district court abuses its discretion if it fails

16  to hold an *in camera* hearing on disclosure. *Id.* at 1239.

17  Defendant Largaespada argues that defendants have a need for disclosure because the

18  informants were participants in "critical events" at issue in this case.  He lists several ways in

19  which the informants are referenced in discovery or the indictment.  Informants 1211 and 1218

20  provided law enforcement with information about MS-13's operations, leaders and members.

21  Informants 1211 and 1218 attended MS-13 meetings with defendants which support the RICO

22  conspiracy counts against them.  Informant 1211 told the authorities about meetings with

23  defendants Cerna, Aristedes Carcamo, Marvin Carcamo, and Castillo where various crimes

24  were discussed.  Informant 1218 attended meetings with defendants Cerna, Castillo, Flores,

25  Palma, Garrido, Marvin Carcamo, and Largaespada.

26  Informant 1218 also discussed the buying and selling of narcotics with defendant

27  Castillo and provided authorities with information about a violent crime allegedly committed by

28  defendants Palma and Marvin Carcamo.  Informant CS-06-1222710 allegedly purchased two

United States District Court

For the Northern District of California

1   ounces of methamphetamine from defendants Sosa, Briez, and Urias.  This transaction is

2   charged as part of Counts 26 and 30 against them, and informant CS-06-1222710 was the only

3   participant besides defendants in that event.

4       Defendants rely on *Barajas v. Wise*, 481 F.3d 734 (9th Cir. 2007), which stated that

5   "when an informant is a participant in the events critical to the prosecution's case, no claim may

6   be raised under *Roviaro* that the informant's identity can be lawfully withheld from the

7   appellants — disclosure is inherently 'relevant and helpful.'"  *Id.* at 739.  *Barajas*, however,

8   was vacated upon rehearing *en banc* and subsequently resolved in an unpublished opinion.  *See*

9   *Barajas v. Wise*, 506 F.3d 736 (9th Cir. 2007).  Counsel must try harder to cite only good law.

10       This order nevertheless finds that defendant Largaespada has made the requisite

11   threshold showing required by *Henderson* that the confidential informants have information

12   which will prove "relevant and helpful" to the defense of several defendants.  Specifically, he

13   has established the threshold showing regarding informant 1211 as to defendants Cerna,

14   Aristedes Carcamo, Marvin Carcamo, and Castillo.  He has established the threshold showing

15   regarding informant 1218 as to defendants Cerna, Castillo, Flores, Palma, Garrido, Marvin

16   Carcamo, and Largaespada.  He has established the threshold showing regarding informant CS-

17   06-1222710 as to defendants Sosa, Briez, and Urias.

18       An *in camera* hearing is therefore justified.  The hearing will be held ex parte, with only

19   judicial staff, prosecutors and witnesses present, in order to protect the identity of the

20   informants.  A defendant for whom the threshold showing has been made as to a particular

21   informant, as specified above, may submit written questions regarding that informant to the

22   Court and opposing counsel three days or more before the hearing.

23       The Court orders an *in camera* evidentiary hearing to determine whether to allow

24   disclosure of the confidential informants' identities.  The government is **ORDERED** to produce at

25   the hearing one or more witnesses with knowledge of any relevant informant's identity and role

26   in the investigation of this action.  The hearing will be held on **OCTOBER 7, 2009 AT 8 A.M.**

27       Finally, defendant Largaespada argues that the government should be ordered to

28   disclose whether it used any informants other than the three described above.  Defendant

**United States District Court**
For the Northern District of California

1   Largaespada argues that, because one informant is identified as "CS-06-1222710," there may

2   have been informants numbered below "06" whom the government chose not to use and who

3   were not mentioned. That fact alone, he argues, would be helpful to the defense. Defendant

4   Largaespada fails to establish entitlement to such a disclosure. The request amounts to a fishing

5   expedition and is denied.

6                    **DEFENDANT NOCHEZ'S MOTION FOR GRAND JURY RECORDS.**

7          Defendant **NOCHEZ** moves on behalf of all defendants for inspection and copying of

8   grand jury records (Dkt. No. 441). Defendant indicates that the defense team is preparing a

9   motion to challenge the Northern District's jury selection procedures and therefore seeks three

10  categories of information: (1) the manual of procedures used by the clerk to compile and

11  qualify the jury wheels; (2) the names on the 2008 and 2009 qualified jury wheels; and (3) "any

12  other statistical compilations compared by the clerk's office concerning the makeup of the jury

13  pool from which the grand jury that indicted the defendants was drawn."

14         The government does not object to the first two requests and indicates that, with an

15  appropriate order, it will work with the Clerk of the Court to provide that information. It seeks

16  a protective order, however, to prevent disclosure of addresses and other personal information,

17  and to limit access to defense counsel and their investigators. The government *does* object to

18  the third request on the grounds that it is vague and overbroad. The parties have met and

19  conferred on defendant Nochez's motion and submitted a joint proposal for release of these

20  records, which will be the subject of a separate order.

21                   **DEFENDANT HERRERA'S MOTION FOR GRAND JURY RECORDS.**

22         Defendant Herrera also moves for release of grand jury records. Count 10 of the

23  indictment charges Herrera with murder of "victim 11" in aid of racketeering. The charge

24  carries a maximum penalty of death. 18 U.S.C. 1959(a)(1). Herrera seeks disclosure of the

25  legal instructions given to the grand jury as to Count 10 to support an attack on the indictment's

26  death-penalty allegations. Defendant Herrera seeks to determine if the grand jury was properly

27  instructed on the elements of a capital offense. If they were not, he argues, he would be entitled

28  to dismissal of any notice of intent to seek the death penalty.

United States District Court

For the Northern District of California

1    Defendant Herrera's motion for grand jury records is **DENIED WITHOUT PREJUDICE** to

2    renewing it later (Dkt. No. 523).  Both the government and Herrera now have stipulated that the

3    motion at present is premature because the government has yet to decide whether or not it will

4    pursue the death penalty.  If the government chooses to seek the death penalty, it must state the

5    aggravating factors on which it intends to rely in the notice of intent to seek the death penalty.

6    18 U.S.C. 3593(a).  As per the final scheduling order, any statutory notice of intent to seek the

7    death penalty in this case must be filed no later than **NOVEMBER 16, 2009, AT NOON**.  If such a

8    notice is filed as to defendant Herrera, he may then renew his motion for grand jury records.

9                              **DEFENDANT SOSA'S MOTION TO CONTINUE.**

10    Counsel for defendant Sosa moves to continue the hearings for the Stage III suppression

11    motions and Stage II discovery motions (Dkt. No. 447).  Counsel for defendant Sosa wishes to

12    present any such motions on December 15, 2009, or 30 days after the government's first *Brady*

13    production, whichever is later.  Counsel argues that discovery has been voluminous and that (he

14    understands) additional discovery is still being "processed" — presumably translated — and has

15    yet to be provided to the defense.  The motion is **DENIED**, although the Court will consider on a

16    case-by-case basis later requests for leave to file any motions based on a showing that

17    defendants could not, with the exercise of diligence, have brought them by the current

18    deadlines.

19

20    **IT IS SO ORDERED.**

21

22    Dated:  September 16, 2009.

23                                                              WILLIAM ALSUP
                                                               UNITED STATES DISTRICT JUDGE

24

25

26

27

28