Pages 1 - 42

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM ALSUP

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
   vs.                         )
                               )
IVAN CERNA, MARVIN CARCAMO,    )
ANGEL NOEL GUEVARA, MORRIS     )
FLORES, GUILLERMO HERRERA,     )
JONATHAN CRUZ-RAMIREZ,         )
WALTER CRUZ-ZAVALA, WALTER     )
PALMA, DANIEL PORTILLO,        )
ERICK LOPEZ, CARLOS GARRIDO,   )      No. CR 08-0730 WHA
WALTER CHINCHILLA-LINAR,       )
CESAR ALVARADO, DOUGLAS        )
LARGAESPADA, WILBERT           )
CASTILLO, MELVIN MALDONADO,    )
MANUEL FRANCO, RODRIGO         )
MOLINA, MAURICIO URIAS,        )
JUDITH SOSA, JOHN LACSAMAN     )
BRIEZ, ARISTIDES CARCAMO,      )
RAFAEL MONTOYA, RENE           )
MONTES-MAYORGA, RODIL          )
NOCHEZ, DANIEL GONZALEZ,       )
                               )
          Defendants.          )
_____)

                         San Francisco, California
                         December 9, 2008

          **Reporter's Transcript of Proceedings**

**Appearances:**

(Appearances on next page)


**Reported By:**        **Katherine Powell Sullivan, CSR 5812**
                        **Official Reporter**

*Katherine Powell Sullivan, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

```
 1   Appearances:

 2   For Plaintiff:          Joseph P. Russoniello
                             United States Attorney
 3                           450 Golden Gate Avenue, Box 36055
                             San Francisco, California  94102
 4                     By:   Wai Wilson Leung, AUSA

 5                           U.S. DEPARTMENT OF JUSTICE
                             950 Pennsylvania Ave. NW, Room 7651
 6                           Washington, DC 20530
                       By:   Laura Gwinn, Attorney
 7
     For Defendants          Sugarman & Cannon
 8   Ivan Cerna,             44 Montgomery Street, Suite 2080
     Rodrigo Molina*:        San Francisco, California  94104
 9                     By:   Christopher Cannon, Esquire
                             *(Specially appearing for Mr. Loveseth)
10
     For Defendant
11   Angel Noel Guevara:     Law Offices of Harris B. Taback
                             345 Franklin Street
12                           Suite 102
                             San Francisco, California  94102
13                     By:   Harris B. Taback, Esquire

14   For Defendants          Law Offices of Harry Crane Singer
     Mauricio Urias,         117 Beaumont Street
15   Daniel Portillo*:       San Francisco, California  94118
                       By:   Harry Crane Singer, Esquire
16                           *(Specially appearing)

17   For Defendants
     Guillermo Herrera,      Law Offices of Martin Sabelli
18   Walter Chinchilla-Linar,500 Liberty Street
     Walter Cruz-Zavala*,    San Francisco, California  94114
19   Morris Flores*,    By:  Martin Sabelli, Esquire
     Rodrigo Molina*:        *(Specially appearing)
20
     For Defendant
21   Jonathan Cruz-Ramirez:  Law Office of Susan Raffanti
                             483 Ninth Street, Suite 200
22                           Oakland, California  94612
                       By:   Susan Marie Raffanti, Esquire
23

24   (Appearances continued on next page)

25
```

(Appearances continued on next page)

**<u>APPEARANCES (CONTINUED)</u>**

```
 1
 2  For Defendant
    Walter Palma:          Law Office of Anthony J. Brass
 3                         3223 Webster Street
                           San Francisco, California  94123
 4                  By:    Anthony J. Brass, Esquire

 5  For Defendant
    Erick Lopez:           Law Office of Peter Goodman
 6                         400 Montgomery Street, 2nd Floor
                           San Francisco, California  94104
 7                  By:    Peter Goodman, Esquire

 8  For Defendant
    Melvin Maldonado:      Law Offices of Brian Berson
 9                         235 Montgomery Street, Suite 625
                           San Francisco, CA 94104
10                  By:    Brian Berson, Esquire

11  For Defendant
    Cesar Alvarado:        Law Office of Mark Stuart Goldrosen
12                         255 Kansas Street, Suite 340
                           San Francisco, California  94103
13                  By:    Mark Stuart Goldrosen, Esquire

14  For Defendant
    Douglas Largaespada:   Law Office of Erik Babcock
15                         1212 Broadway, Suite 726
                           Oakland, CA 94612
16                         Oakland, California  94612
                    By:    Erik Babcock,  Esquire
17
    For Defendant
18  Judith Sosa:           Coleman & Balogh, LLP
                           225 Bush Street, Suite 1600
19                         San Francisco, California  94104
                    By:    Ethan A. Balogh, Esquire
20
    For Defendant
21  John Lacsaman-Briez:   Law Office of John Runfola
                           Pier 9, Suite 100
22                         San Francisco, California  94111
                    By:    John Runfola, Esquire
23

24  (Appearances continued on next page)

25
```

*Katherine Powell Sullivan, CSR, RPR,CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

**APPEARANCES (CONTINUED)**:

```
 1   APPEARANCES (CONTINUED):

 2   For Defendant
     Rafael Montoya:          Swanson McNamara & Haller, LLP
 3                            300 Montgomery Street, Suite 1100
                              San Francisco, California  94104
 4                      By:   Edward W. Swanson, Esquire

 5   For Defendant
     Rene Montes-Mayorga:     Law Office George Claude Boisseau
 6                            740 4th Street, Second Floor
                              Santa Rosa, California  95404
 7                      By:   George Claude Boisseau, Esquire

 8   For Defendant
     Rodil Nochez:            Law Office of Seth P. Chazin
 9                            1164 Solano Avenue
                              Albany, California
10                      By:   Seth P. Chazin, Esquire

11   For Defendant            Law Office of Linda Ann Fullerton
     Marlon Lumang:           54 Railroad Avenue, #11
12                            Richmond, CA 94801
                        By:   Linda Ann Fullerton, Esquire
13
     For Defendant            Law Office of John J. Jordan
14   Jose Alvarado:           400 Montgomery Street, Suite 200
                              San Francisco, CA 94104
15                      By:   John J. Jordan, Esquire

16   For Defendant            Law Offices of Ellen Leonida
     Marvin Carcamo:          819 Eddy Street
17                            San Francisco, CA 94109
                        By:   Ellen Leonida, Esquire
18
     For Defendant            Stiglich & Hinckley LLP
19   Jose Antunez:            502 7th Street
                              San Francisco, CA 94103
20                      By:   Mike Hinckley, Esquire

21   For Defendant            Law Offices of Shana Keating
     Aristides Carcamo:       1934 Divisadero Street
22                            San Francisco, CA 94115
                        By:   Shana Keating, Esquire
23


24                              - - - -

25
```

1                    **P R O C E E D I N G S**

2    **DECEMBER 9, 2008**                              **2:17 P.M.**

3

4              **THE COURT:**  Welcome everyone.  Please have a seat.

5              **THE CLERK:**  Please be seated, everyone.

6              Calling Criminal Case No. CR 08-073,

7    United States v. Ivan Cerna, Marvin Carcamo, Angel Guevara,

8    Morris Flores, Guillermo Herrera, Jonathan Cruz-Ramirez, Walter

9    Cruz-Zavala, Walter Palma, Daniel Portillo, Eric Lopez, Walter

10   Chinchilla-Linar, Cesar Alvarado, Jose Alvarado, Douglas

11   Largaespada, Melvin Maldonado, Rodrigo Molina, Mauricio Urias,

12   Judith Sosa, John Briez, Jose Antunez, Aristides Carcamo,

13   Rafael Montoya, Rene Montes-Mayorga, Rodil Nochez, and Marlon

14   Lumang.

15             Counsel, I will also need your appearances for the

16   record.

17             **MR. LEUNG:**  Wilson Leung for the government.  With

18   me, Your Honor, is trial attorney Laura Gwinn from the

19   Department of Justice.  Good afternoon.

20             **MS. GWINN:**  Good afternoon.

21             **MR. BRASS:**  Good afternoon, Your Honor.  Tony Brass

22   for Walter Palma.  He's present.

23             **MR. SABELLI:**  Good afternoon, Your Honor.  Martin

24   Sabelli for Guillermo Herrera, who's present.

25             I'm also here for Mr. Zavala, Mr. Molina, and

1  Mr. Chinchilla.

2          **MR. SINGER:**  Harry Singer on behalf of Mr. Urias.

3  And I'm making a special appearance for Jeffrey Glenn, on

4  behalf of Mr. Portillo.

5          **MR. SABELLI:**  Your Honor, Martin Sabelli.  I'm also

6  here for Mr. Flores.

7          **MS. FULLERTON:**  Linda Fullerton appearing with Marlon

8  Lumang.

9          **MS. LEONIDA:**  Ellen Leonida appearing with Marvin

10  Carcamo.

11          **MR. RUNFOLA:**  Good afternoon, Your Honor.  John

12  Runfola for Mr. Briez, who's seated at the end of the last row,

13  closest to you.

14          **MR. TABACK:**  Good afternoon, Your Honor.  Harris

15  Taback.  I'm appearing for Angel Guevara.  Mr. Guevara is

16  present and he's in custody in the back row, second to the

17  left.

18          **MR. HINCKLEY:**  Good afternoon, Your Honor.  Mike

19  Hinckley for Jose Antunez, who's present and in custody in the

20  far left back corner.

21          **MR. BABCOCK:**  Good afternoon, Your Honor.  Erik

22  Babcock for Douglas Largaespada, who's the second from the end

23  of the wooden table there.

24          **MR. GOLDROSEN:**  Good afternoon, Your Honor.  Mark

25  Goldrosen for Cesar Alvarado.  He's in custody, first row,

1  second from the right.

2          **MR. BALOGH:**  Good afternoon, Your Honor.  My name is

3  Ethan Balogh.  I represent Ms. Judith Sosa.

4          Stand up, please, Ms. Sosa.

5          She's present, out of the custody of the

6  United States marshals.

7          **THE COURT:**  I'm sorry, your name?

8          **MR. BALOGH:**  It's Balogh.  B as in boy, a-l-o-g-h.

9  First name Ethan.

10          **THE COURT:**  Mr. Balogh.  And your client is who?

11          **MR. BALOGH:**  Balogh, rhymes with shallow.

12          **THE COURT:**  Shallow Balogh.

13          **MR. BALOGH:**  Thank you, Your Honor.

14          My client is Judith Sosa, defendant number 23.

15          **THE COURT:**  All right.  She's out of custody.

16          Okay.  Welcome, Ms. Sosa.

17          **MS. KEATING:**  Good afternoon, Your Honor.  Shana

18  Keating on behalf of Aristides Carcamo, who's present before

19  the Court, in custody.

20          **THE COURT:**  Okay.

21          **MR. JORDAN:**  Good, Your Honor.  John Jordan on behalf

22  of Jose Alvarado, who's present in custody, in the middle row,

23  at the end.

24          **THE COURT:**  Okay.  Welcome.

25          **MR. BERSON:**  Good afternoon, Your Honor.  Brian

```
 1   Berson for Melvin Maldonado, who is seated to my left, in

 2   custody.

 3           THE COURT:  I'm sorry, where's your client?

 4           MR. BERSON:  Right here.  First row, all the way on

 5   the left.

 6           THE COURT:  All right.  Welcome, Mr. Maldonado.

 7           All right.  Next.

 8           MR. SWANSON:  Good afternoon, Your Honor.  Ed Swanson

 9   on behalf of Rafael Montoya, who's in the back row, third from

10   the left.

11           THE COURT:  Welcome.

12           MS. RAFFANTI:  Good afternoon, Your Honor.  Susan

13   Raffanti for Mr. Jonathan Cruz-Ramirez, who's present.  He's

14   third from the left in the middle row.

15           THE COURT:  Where?

16           MS. RAFFANTI:  Third from the left in the middle row.

17           THE COURT:  Got you.  Thank you.

18           MR. BOISSEAU:  Good afternoon, Your Honor.  George

19   Boisseau on behalf of Rene Montes-Mayorga, who's second from --

20   in the back row, closest to you.

21           THE COURT:  All right.  Good.

22           MR. GOODMAN:  Good afternoon, Your Honor.  Peter

23   Goodman appearing for Erick David Lopez, who's in the middle

24   row, second from the left.

25           THE COURT:  Say that again.  Middle row?
```

1              MR. GOODMAN:  Second from the left.  Man with the

2    goatee.

3              THE COURT:  Welcome.

4              MR. CHAZIN:  Good afternoon, Your Honor.  Seth Chazin

5    appearing for Rodil Nochez, who's present, out of custody,

6    standing up in the back.

7              THE COURT:  I'm sorry.  Mr. Chazin, your client's

8    name is what?

9              MR. CHAZIN:  Rodil Nochez.

10             THE COURT:  Welcome.

11             MR. CANNON:  Good afternoon, Your Honor.  Christopher

12   Cannon for Ivan Cerna, who's in the front row closest to you.

13             THE COURT:  All right.  Welcome.  Is that it?

14             Mr. Hanson, who do you represent?

15             MR. HANSEN:  Next case, Your Honor.

16             THE COURT:  Oh.  That's right.

17             Everyone has made an appearance.  Have I missed

18   anyone?

19             MR. CANNON:  Your Honor, I'm Christopher Cannon, also

20   specially appearing for Ian Loveseth, who's representing

21   Rodrigo Molina.

22             THE COURT:  Anyone -- any defendants not get called

23   here?  All right.  Okay.

24             INTERPRETER MS. BASKER:  Your Honor, Melinda Basker

25   and Nina Safdie are the interpreters.

```
 1              THE COURT:  How are you hooked up?  Everyone being
 2    able to get the single feed off of you?
 3              INTERPRETER MS. BASKER:  All the people that
 4    indicated that they need an interpreter have equipment, they
 5    can hear amplified into their ears.
 6              THE COURT:  All right.  Very good.  Thank you.
 7              This is quite a group.  What does the government have
 8    to say?
 9              MR. LEUNG:  Your Honor, first, I believe -- Wilson
10    Leung for the government.
11              First, I think we need to arraign most of the
12    defendants on the superseding indictment.  And then we're
13    prepared to report on the status of the case.
14              THE COURT:  All right.  Well, I've got the bench book
15    here on arraignments.  I've got to go down this on every single
16    person.
17              MR. LEUNG:  Your Honor, in light of the fact that all
18    these defendants have previously been arraigned on the original
19    indictment, and the subsequent superceding indictment has not
20    changed except by adding an additional count charging two
21    particular defendants -- Aristides Carcamo and Rafael
22    Montoya -- we believe that an abbreviated arraignment would be
23    appropriate here, where you just advise them that this is a
24    superseding indictment, contains the same charges, same maximum
25    punishments, and that you intend to enter a plea of not guilty
```

1  for all of them, unless they object.

2          And I believe counsel consent to that.

3          **MR. SINGER:**  On behalf of Mr. Urias, we will waive

4  further reading of the indictment and stipulate to the

5  remaining (inaudible).

6          (Reporter interrupts.)

7          **MR. SINGER:**  Mr. Urias.

8          **MR. CANNON:**  Christopher Cannon on behalf of Ivan

9  Cerna.  We would do the same thing.

10          What I would suggest, Your Honor, is that if any

11  other counsel would wish to opt out of that process, they could

12  just say that they're opting out, rather than having every

13  counsel say that they agree to that process.

14          **THE COURT:**  That's a fair point.

15          Before we do that, what are we going to do for the

16  new counts?  Somebody's been charged with new counts.  Who are

17  they?

18          **MR. LEUNG:**  Those are Aristides Carcamo and Rafael

19  Montoya.  And they have already been arraigned on the

20  superseding indictment in magistrate's court.

21          And, also, Rene Montes-Mayorga and John Lacsaman

22  Briez were also arraigned on the superseding indictment in

23  magistrate's court, as well, because they arrived in the

24  District late.

25          The other defendants were originally arraigned only

1  on the original indictment.  But their charges have not changed

2  in any substantive way.

3          THE COURT:  All right.

4          MR. SABELLI:  Your Honor, this is Martin Sabelli.

5  Friendly amendment to Mr. Cannon, that, following the same

6  procedure, that all of the clients also be entered a not guilty

7  plea when they're arraigned, unless somebody has an objection

8  to that, which I don't think there will be.  If you could add

9  that, Your Honor, we would appreciate it.

10          THE COURT:  All right.  Anybody -- any counsel want

11  to object to the procedure that the government counsel laid out

12  and Mr. Cannon voluntarily agreed to by suggesting we operate

13  by exception rather than by affirmative opt in?

14          Anyone want to object to that procedure?  If you

15  don't object, I'm going to deem it that you consented.  Agreed?

16          (Counsel simultaneously respond in the affirmative.)

17          THE COURT:  Anyone disagree?

18          (No response.)

19          THE COURT:  Okay.  That's the way we will proceed

20  then.  So I want to advise the -- all of the defendants, with

21  the exception of John Lacsaman Briez, Aristides Carcamo, Rafael

22  Montoya, Rene Montes-Mayorga, Aristides -- I guess just those

23  four, they've already been arraigned on the new superseding

24  indictment.

25          But for everyone else who is a defendant and is here,

1   I want to tell you there's been a new indictment, called a

2   "superseding indictment" returned by the grand jury.  And it

3   charges you with the same things that you were charged with

4   before.  And it does not affect the charges that you have been

5   arraigned on already.  The only thing that's different is that

6   there is a new count, charging Aristides Carcamo and Rafael

7   Montoya.  That's new, but that doesn't affect the rest of you.

8   So there's -- there's that change.  And, again, as for the rest

9   of you, the charges against you remain the same as they were

10  before.

11          Now, technically, we need to get you to enter a plea

12  to the new indictment, the new superseding indictment.  But

13  we're going to make it easy, and just enter not guilty pleas.

14          They've already entered not guilty pleas on the old

15  one, right?

16          **MR. LEUNG:**  That's correct, Your Honor.

17          **THE COURT:**  You've already entered not guilty on the

18  old indictment, so I'm going to carry that forward to the

19  superseding indictment and deem it to be that you have entered

20  a not guilty plea to the new superseding indictment, unless

21  somebody stands up and objects right now.

22          Anyone want to stand up and object right now?

23          (No response.)

24          The record will show no one is objecting.

25          All right.  So the clerk is going to record not

1  guilty pleas on behalf of all defendants.

2           All right.  So the arraignment is now done, right?

3           MR. LEUNG:  Thank you, Your Honor.

4           THE COURT:  Okay.  What do you want me to do next?

5           MS. GWINN:  Your Honor, Laura Gwinn on behalf of the

6  government.

7           To report to the Court on the status of discovery,

8  we've produced approximately 3,000 pages of discovery thus far.

9  I believe yesterday another thousand pages was dropped off to

10  Colour Drop.  We are continuing to work to get through all of

11  the discovery so that it can be provided to defense counsel on

12  a timely basis.

13           There are some tape-recordings that we're working on,

14  with the hope of getting them to counsel as soon as possible,

15  some draft transcripts.

16           THE COURT:  When you say "as soon as possible," what

17  date would you have it done by?

18           MS. GWINN:  Well, I'd love to be able to give you a

19  date.  Part of it is with regard to technical issues.  But

20  we -- I can tell the Court, we are working on it and we'll get

21  it to them as soon as we can.  Hopefully -- let me just consult

22  with Mr. Leung.

23           We believe that within a month the -- probably 98 or

24  99 percent of the discovery will be completed.  I would hate to

25  say 100 percent, just because there may be some forensic

1   reports that haven't come in that --

2          **THE COURT:**  See, what will happen is, on the 29th

3   day -- you won't do anything for 28 days, and then on the 29th

4   day, it --

5          **MS. GWINN:**  No.

6          **THE COURT:**  Why don't you do this:  Why don't you

7   promise me that by -- today is December 9th.  Two weeks from

8   today is what?

9          **MS. GWINN:**  The 23rd.

10          **THE COURT:**  By December 23rd, half of the material

11   will be turned over, and that the other half is going to be

12   turned over by January 8th.

13          **MS. GWINN:**  Half of what's outstanding?

14          **THE COURT:**  Half of what you said you're going to

15   turn over.  Whatever it is, you said that it would all be done

16   in 30 days.

17          **MS. GWINN:**  We expect it to be done, 98 to 99 percent

18   of the discovery, within 30 days.  And we're turning it over as

19   we --

20          **THE COURT:**  I'm just asking you to do half of it in

21   half of that time.  That way the lawyers can be reviewing it.

22          I promise you what's going to happen, I've seen this;

23   it's a broken record.  The government says, We're going to

24   produce.  The defense lawyers say, Great.  The next hearing

25   comes around and they say, Yeah, but they didn't produce until

1  the last minute, and we're not prepared to give you any

2  information about motion practice.

3           So we can deal with that by you providing half of

4  that information by December 23rd, and the other half by

5  January, let's say, 8th.  Then there won't be any excuse for

6  not having reviewed it.

7           **MS. GWINN:**  My belief, barring any sort of technical

8  difficulty, is that we would be able to do that.

9           **THE COURT:**  Great.  I don't like the "barring" part.

10          **MS. GWINN:**  Well --

11          **THE COURT:**  There won't be any technical

12  difficulties.

13          **MS. GWINN:**  I hope so, Your Honor.

14          **THE COURT:**  Your office has done this many times.

15          **MS. GWINN:**  I hope you're right, Your Honor.

16          **THE COURT:**  They understand how to do it, so let's

17  just get it done.

18          All right.  Now, you want to come back here in how

19  many days?  I saw somewhere somebody wants a speedy trial in

20  this case.

21          So you've got a problem, Mr. Leung.  They don't all

22  want to go along with your program.

23          **MR. LEUNG:**  I think most of the defendants would ask

24  for a two-month continuance, but I think Ms. Keating,

25  Mr. Swanson, Mr. Boisseau, and Mr. Balogh would pursue an

1  alternative schedule.

2          **MR. SWANSON:**  Your Honor, if I can be heard on that?

3  Ed Swanson on behalf of Mr. Montoya.

4          Your Honor, Mr. Montoya and Mr. Carcamo are in a very

5  discreet part of this case.  I think it's a part of the case

6  this Court's already somewhat familiar with, from having heard

7  Mr. Carcamo's bail motion.

8          It involves an allegation of an attempted robbery of

9  a stand at a flea market.  That's the case.  It involves a

10  handful of recordings --

11          **THE COURT:**  You're not in that case.  Ms. Keating is.

12          **MR. SWANSON:**  We both are.  It's a two-defendant

13  case.

14          **THE COURT:**  How can it be a two-defendant case?

15          **MR. SWANSON:**  Well, because there are two individuals

16  who are charged with the same offense.

17          **THE COURT:**  Who is your client?

18          **MR. SWANSON:**  Mr. Montoya.

19          This is the new count that was added, belatedly, to

20  the indictment, to make it a superseding indictment that just

21  involves our two clients.  Our clients are not part of the RICO

22  conspiracy.  They've not been alleged to be a part of any other

23  count in this.

24          **THE COURT:**  You want to go to trial before they amend

25  to include you in any more charges, that's fine.

1          MR. SWANSON:  My client's in custody, Your Honor, so,

2   obviously, we want to move as quickly as we can.  We think the

3   information on our clients is fairly discreet.

4          What we would ask, having spoken with government

5   counsel about a schedule, is to return to the court on

6   January 27th, for a motions hearing, with filing of motions two

7   weeks in advance of that.

8          We could either set the trial date now or set the

9   trial date at that motions hearing, as the Court would prefer.

10         THE COURT:  Well, I -- I want to hear from the

11  government on this, as well.  But before I go any further, I

12  can see you've got a couple of other lawyers who may be asking

13  for similar things.  I need to see what all the requests are.

14         But give me the date, again, Mr. Swanson, please.

15         MR. SWANSON:  Your Honor, the date we suggested for a

16  motion hearing is Tuesday, January 27th.  We spoke with the

17  government counsel.  That's a date that is convenient for both

18  of them.

19         THE COURT:  So that means you would be filing these

20  motions even sooner?

21         MR. SWANSON:  Two weeks before that, Your Honor, yes.

22         THE COURT:  That doesn't give the government much

23  time to respond.

24         MR. SWANSON:  Well, Your Honor, we were thinking we

25  would do it on the normal two-week motion filing calendar.  If

1  the Court would like something longer than that, we'd be glad

2  to accommodate.

3       **THE COURT:**  We can talk about the schedule later.

4  All right.  Motions hearing.  And then you want a trial.

5       **MS. KEATING:**  Within 60 days.

6       **THE COURT:**  In February?

7       **MS. KEATING:**  Yes.

8       **THE COURT:**  And then just let me write down the name

9  of your clients again.

10      **MR. SWANSON:**  Rafael Montoya.

11      **MS. KEATING:**  And Aristides Carcamo.

12      **THE COURT:**  Carcamo.  Now, he is the one that I

13  have -- Carcamo.  Isn't he the one who I said you've got to get

14  the paperwork at the halfway house program?

15      **MS. KEATING:**  We're in the process of having it

16  released.  We're hopeful that it will happen within one week.

17      **THE COURT:**  We'll come back to you after I hear more

18  about what Mr. Boisseau wants.

19      Mr. Boisseau, what is your program?

20      **MR. BOISSEAU:**  My program would be on behalf of

21  Montes-Mayorga.  He's charged with two gun counts, being an

22  unlicensed gun dealer and alien in possession of a weapon.

23  That's the only counts he's charged with.

24      My request would be to come back on the 27th, for a

25  motion-setting hearing at that point in time.

1          I'm not prepared to commit to filing motions two

2   weeks in advance, like other counsel, because I have no

3   discovery on Mr. Montoya's behalf.  So I'm awaiting the

4   discovery, then I'll be able to at least tell the Court

5   realistically what motions I'll be filing shortly thereafter --

6   shortly after the 27th.

7          **THE COURT:**  How does that compare with the 60-day

8   date that -- the general paper Mr. Sabelli submitted?  Is that

9   the same date?

10         **MR. BOISSEAU:**  No, Your Honor.  That would be 30

11  days, I assume a bit earlier than the other counsel that are

12  requesting.

13         **THE COURT:**  Oh, no, because today is only the 9th.

14  The 9th plus 60, that would put us into early February.  This

15  is maybe 10 days shy.

16         **MR. BOISSEAU:**  Well, Your Honor, I thought, given the

17  fact that we had other counsel coming back on the 27th, that

18  was an acceptable date, so -- but we could set a 30-day hearing

19  before this court.  I can come back in 30 days.

20         **THE COURT:**  No, I was just asking.  I'm asking --

21  with the 27th, I'm asking if that's the same date.  It's a

22  different date?

23         **MR. BOISSEAU:**  No, it's a different date.

24         **THE COURT:**  I don't understand.  You just want to

25  have a hearing to set what motions will be done in the future?

1          MR. BOISSEAU:  Yes.  And it comes down to excludable

2    time.  I'm prepared to enter an excludable time order or agree

3    to excludable time until that date because I don't have any

4    discovery.  But not a longer date after that point in time.

5          THE COURT:  Okay.  Motion setting -- and your

6    client's name is what?

7          MR. BOISSEAU:  Montes-Mayorga.

8          THE COURT:  Okay.  But so -- and what does the

9    government say to your plan?

10          MR. LEUNG:  Sorry?

11          THE COURT:  Are you in agreement with that?

12          MR. LEUNG:  Your Honor, we are fine with that -- of

13    setting January 27th of '09, as a motion-setting date for

14    Mr. Montes-Mayorga.

15          THE COURT:  All right.

16          MR. LEUNG:  If he wants to come back sooner.

17          THE COURT:  Who's next with any special request?

18          MR. BALOGH:  Hello, Your Honor.  Ethan Balogh on

19    behalf of Ms. Sosa.  I would like to be heard on motions on the

20    27th of January, as well, and would agree that the court local

21    rule for a 14-day schedule is appropriate.  And if the Court

22    wants a different briefing schedule to meet that schedule, we'd

23    like to be heard on our motions.

24          And we share the Court's concern about pushing the

25    case out, because while we're awaiting discovery the best way

```
 1  to get the case going is to get it going.

 2              THE COURT:  Just one second.

 3              THE CLERK:  They have changed interpreters, and I

 4  don't think this one has been sworn.

 5              THE COURT:  Have you been sworn?

 6              INTERPRETER MS. SAFDIE:  No, I've not.

 7              THE COURT:  The court clerk will swear you in.

 8              (Interpreter Nina Safdie sworn to translate

 9              proceedings from English into Spanish and from

10              Spanish into English.)

11              INTERPRETER MS. SAFDIE:  I do.

12              THE CLERK:  Okay.  Thank you.

13              THE COURT:  Go ahead.  Are you hooked up to your

14  machine?

15              INTERPRETER MS. SAFDIE:  Yes.

16              THE COURT:  All right.  So you want Ms. Sosa's -- you

17  want to be on the same track, then, as Mr. Swanson?

18              MR. BALOGH:  Yes.  And just so you know, to orient

19  the Court to where we fit in the case, Ms. Sosa is charged with

20  two other co-defendants, Mr. Urias, who's alleged to be part of

21  the RICO conspiracy, and Mr. John Lacsaman Briez, who is not

22  alleged to be part of the RICO conspiracy.

23              Ms. Sosa's joined with them in one conspiracy count

24  and four separate narcotics counts that form Counts 26 to 30,

25  but she is not a part of the RICO conspiracy, or alleged to be.
```

1   And we want to get her case going forward.

2          **THE COURT:**  Was it your idea to have a trial earlier

3   than the main group?

4          **MR. BALOGH:**  Yes.

5          **THE COURT:**  But if she is -- did you say she is or is

6   not alleged to be part of the conspiracy?

7          **MR. BALOGH:**  She is not alleged to be part of the

8   RICO conspiracy.  And we've been engaged in discussion with all

9   counsel regarding appropriate severance or joinder motions.  If

10  those issues are not resolved by the time my motions become

11  due, they'll be addressed in the motions themselves.

12          But her part of the case, as alleged by the

13  government, is also discreet and excisable from the greater

14  RICO conspiracy.  And we see the benefit of proceeding with

15  this case as charged now than putting it on a case of potential

16  years.

17          **THE COURT:**  All right.  I understand.

18          Who else would Like to be heard?

19          **MR. CHAZIN:**  Good afternoon, Your Honor.  Seth Chazin

20  on behalf of Rodil Nochez.

21          My client is also in a similar situation to these

22  other individuals who are indicating that they're a discreet

23  part of the case.  My client is not included as part -- is not

24  charged with the RICO conspiracy.

25          I'm in the situation more along the lines of

```
 1  Mr. Boisseau.  I prefer to be able to review the discovery

 2  initially.  I haven't had a chance to do that.

 3          THE COURT:  You don't want to have an early trial so

 4  that that can be --

 5          MR. CHAZIN:  We may.

 6          THE COURT:  -- an earlier trial, but you want to come

 7  back on the 27th, and set a schedule for your motions, as

 8  opposed to filing motions and having them heard on that day?

 9          MR. CHAZIN:  Yes, that's correct.  I'm going to have

10  to move a couple things around.  The 10th was better for me,

11  but --

12          THE COURT:  The 10th of January?

13          MR. CHAZIN:  No, the 10th of February, which was, I

14  think, the date being suggested for the rest of the group.

15          But I can try to -- I think, in order to keep the

16  individuals who are in a more discreet part of the case, that

17  are not associated with the RICO conspiracy, in order to keep

18  them together, I'll try to make arrangements to come back on

19  the 27th.  So that's what I would propose on behalf of my

20  client.

21          THE COURT:  All right.  Anyone else want to be heard

22  before -- okay.

23          Let me just give you a problem that I have.  That is

24  a case that's a capital case that goes to trial on

25  February 23rd, and which will go until July, probably.
```

1           So if I'm going to try any part of this case, it has

2     to be done before February 23rd, and be over, verdict and

3     everything.   And I don't know the answer, but I've got 16

4     jurors lined up, 300 witnesses lined up.   We will not delay

5     that date one day.

6           So if you want your case tried before February 23rd,

7     I think you're going to have to move this date of January 27th

8     up some.   And only you know how long this -- I know something

9     about Ms. Keating's case.   That seems like maybe a very short

10    trial.   But I don't know anything about the others.

11          For all I know, it could be much more involved than

12    I'm thinking.   But I cannot run the risk that on February 23rd,

13    I would still be in trial, unless we start holding night court.

14    So I need the help of the lawyers to solve this problem.

15          I ask you to think about moving the dates up a little

16    bit and leaving enough time to actually try these cases if

17    they're short and straightforward.

18          **MR. SWANSON:**   Your Honor, can I ask what the Court's

19    estimated schedule is on the trial that starts on the 23rd?

20          **THE COURT:**   We've asked the jury to clear until July

21    7th.   It'll be five days a week except for court holidays.   I'm

22    running it until 1 o'clock in the afternoon until the jury is

23    deliberating.   When the jury is deliberating, it's conceivable

24    we could try another case while they're deliberating.   That

25    won't be until late April or so.   And we don't know how long

1  they'll deliberate.

2          **MR. SWANSON:**  Well, Your Honor, on behalf of

3  Mr. Montoya, my concern is this:  My client's in custody.  I'm

4  eager to have this matter tried as soon as possible.  I'm out

5  the week of the 16th, which would mean we'd have to do this

6  February 9th.  I've just received --

7          **THE COURT:**  How about moving it up?  I'm saying

8  moving this hearing date up maybe two weeks.

9          **MS. KEATING:**  Your Honor, I have scheduled -- believe

10  me, I've tried to move heaven and earth to do things as early

11  as possible on this case.

12          However, I scheduled over a year ago a 15-day

13  vacation with my husband's family for his parents' 50th

14  anniversary.  We are going on a cruise from January 1st until

15  we return on the 15th of January.  And with some trepidation, I

16  agreed to the abbreviated briefing schedule to get this moving

17  along as fast as possible.

18          I do not want to continue the trial more than 60

19  days.  However, realistically, we do have some investigation to

20  do on the case.  As the Court is aware, I have been working on

21  getting the transcripts fully translated.  The Court knows I've

22  been working very hard on the case.

23          But I think, realistically, as it is right now, I'm

24  going to end up filing the motions two days before I've even

25  returned from that cruise, which means I have to have my

1   motions pretty much done before January 1st.

2          And I think it is unrealistic of me to commit to the

3   Court that I could have them done before that, given that I'm

4   going to be gone for almost two weeks and given the Christmas

5   holidays.  Like I said, although, I would definitely want this

6   moved as fast as possible.

7          **THE COURT:**  How long a trial do you think this will

8   be?

9          **MR. SWANSON:**  I think two, maybe three days, Your

10  Honor.

11         **THE COURT:**  Does the government agree with that?

12         **MR. LEUNG:**  Probably from jury selection to

13  deliberation, probably five trial days, Your Honor.

14         **THE COURT:**  Well, here's what I suggest.  We'll stick

15  with your January 27th date, but what that's going to mean is

16  that we will probably start the trial like in the second week

17  of February.

18         I don't have my calendar here, but let's say it

19  goes -- I don't want to be in a position where we're counting

20  on going right up to the 23rd of February.  I would like to

21  have two or three days' cushion in there before I have to start

22  the capital case.

23         So it's okay with me to stay with the 27th, as long

24  as you clear -- Dawn, tell me what the second week in February,

25  what number day is that?

```
1              MR. SWANSON:  The 9th.

2              THE CLERK:  It's the 9th.

3              MR. SWANSON:  The 9th of February.

4              THE COURT:  Is that a holiday?

5              THE CLERK:  No.

6              THE COURT:  When is Presidents' weekend?

7              THE CLERK:  The following Monday.

8              MR. SWANSON:  And I'm gone that following week, Your

9    Honor.

10             THE COURT:  Well, you might not be able to be gone.

11   Let's say we -- this has got '08 and '10 in it, but doesn't

12   have '09.

13             THE CLERK:  I thought I had '09.  I don't have '09 in

14   here.

15             THE COURT:  I think you gave it to me one day when I

16   asked for it, and I never gave it back.

17             THE CLERK:  Might have, you're right.

18             THE COURT:  One of the lawyers here -- somebody here

19   has a calendar.  What is the Monday that's around the 9th of

20   February?

21             THE CLERK:  Monday is the 9th.

22             THE COURT:  All right.  We'll do it on the 9th.

23             MR. SWANSON:  All right.  Well, we will be here,

24   then, on the 27th, Your Honor.  Would the Court like the

25   two-week normal briefing schedule on this or --
```

1      **THE COURT:**  You tell me the reasonable number of

2  motions, then two weeks is fine.

3      **MR. SWANSON:**  Your Honor, there's going to be a small

4  number of motions, given this case.  I think there's nothing

5  that will burden the Court with that.

6      **THE COURT:**  Work that out with the government.  Just

7  leave me enough time to read it.  So you're here on the 27th,

8  and we'll have a trial on February 9th, 7:30 a.m.  This is

9  for -- this is for --

10      **MR. LEUNG:**  Aristides Carcamo and Rafael Montoya.

11      **MR. SWANSON:**  Your Honor, just to put the motions

12  dates on the record, with the government's concurrence, we

13  would file on the 13th; the government would file on the 20th;

14  we would file any reply by the 22nd.

15      **THE COURT:**  Fine.

16      **MR. LEUNG:**  That gives a week, I think.  I think that

17  should be fine, Your Honor.  I hope that a week is enough to

18  respond to all the motions.  I'm just concerned that if it's

19  voluminous --

20      **THE COURT:**  Well, if it's voluminous and you have

21  good cause, then you can ask for an extension.

22      **MR. LEUNG:**  Thank you, Your Honor.

23      **THE COURT:**  Don't panic until you get there.  All

24  right.

25      **MR. SWANSON:**  Thank you, Your Honor.

 1           **THE COURT:**  Now, having solved the Mrs. Sosa problem,

 2  you want to be here for your motions on January 27th.  Do you

 3  want a trial, their same trial, or do you want a separate

 4  trial?

 5           **MR. BALOGH:**  No, I think we're going to have a

 6  separate trial.  I think we're going to address, between now

 7  and the motions hearing date, questions of severance and

 8  joinder, and we'll probably have other answers for you at the

 9  hearing of the other motions, or that issue will be part of the

10  motions themselves.

11           **THE COURT:**  Can Ms. Sosa be tried alone?  Is that

12  what you're suggesting?

13           **MR. BALOGH:**  She can be tried alone.  She can be

14  tried with her two co-defendants.  She can be tried with one

15  co-defendant.  We're -- I'm concerned about Ms. Sosa.

16           **THE COURT:**  I don't know the answer to -- this is a

17  more complicated problem.  And I actually don't know when I

18  could try the case.

19           **MR. BALOGH:**  From the schedule the Court stated, from

20  its statements about when the jury would be in deliberations

21  and the Court's ability to try this case, its next trial when

22  the Fort matter is under jury consideration, standing here

23  today with a January 27th motion hearing date, there may well

24  be a second round of motions, I don't anticipate that's an

25  issue the Court needs to grapple with and solve today.

1         We're happy to see -- the co-defendants who have

2   selected their February 9th trial date have so, and we don't

3   anticipate running into a speedy trial at this time.

4         **THE COURT:**  All right.  Then I think that answers

5   that.  So, then, on the Mr. Chazin's problem and the

6   Mr. Boisseau problem, we're going to use January 27th to set

7   the rest of your schedule.  But we won't hear any actual

8   motions on that date.  Isn't that what you wanted?

9         **MR. CHAZIN:**  The only thing I would say, Your Honor,

10  is if between now and the next week or two I determine that it

11  would be appropriate to request a speedy trial, then what I

12  will do is make sure to file the motions within the schedule

13  that the Court has already set, if that's okay with the Court.

14        **THE COURT:**  You mean to be heard on the 27th?

15        **MR. CHAZIN:**  That's correct.

16        **THE COURT:**  As long as -- I guess the answer to it,

17  it's okay.  But if a lot of people start piling on, it will be

18  very hard for me to get through all the motions.  I think I can

19  handle one more set of motions.  All right.

20        **MR. CHAZIN:**  I'm glad I got in early then.

21        **THE COURT:**  You might give a heads-up as soon as you

22  know, so the government can start planning, and give me a

23  heads-up so I can start planning.

24        **MR. CHAZIN:**  I will.  Thank you.

25        **MR. LEUNG:**  We'd certainly appreciate that.

```
 1              THE COURT:  Anyone else have a special request?
 2              MR. BOISSEAU:  Well, I don't have a special request,
 3   Your Honor.  Just to follow up, because I'm one of the counsel
 4   for the 27th, I may be in a position to file severance motions
 5   on the 13th, depending on discovery that's going to come in in
 6   a couple of weeks.
 7              So there might be some -- there may be a possibility
 8   I can file a severance motion on the 13th.
 9              THE COURT:  To be heard on the 27th?
10              MR. BOISSEAU:  To be heard on the 27th.
11              THE COURT:  That's fine, but now you're really
12   pushing my limits.
13              MR. BOISSEAU:  And I'll give counsel a heads-up.
14              THE COURT:  I can always let them trail, so I guess
15   the answer's okay, yes.
16              MR. BOISSEAU:  That's fine.  Thank you, Your Honor.
17              THE COURT:  Any more special requests before we hear
18   from the main program?
19              Hearing nothing, okay.
20              Mr. Sabelli, what is your program for the main body
21   of defendants?
22              MR. SABELLI:  Your Honor, I think, after having heard
23   the special exceptions, the Court understands that we have
24   quite a bit of discovery delivered to counsel within the last
25   period of ten days or so.
```

1          The Court -- I'd like to explain to the Court that

2    thus far we have not arrived at a protective or dissemination

3    order with the government.  We're very close, we believe, to

4    doing that.  Until we do so, we cannot share -- we have not

5    shared that discovery with our clients and, therefore, we have

6    not been in a position to start working on the case with our

7    clients.

8          We anticipate, as Ms. Gwinn and Mr. Leung have

9    presented to the Court, that we should have the bulk of the

10   discovery within 30 days.  We understand that much of the

11   discovery will -- some of the important discovery -- for

12   example, reports of investigation -- may be coming in the

13   second round of discovery after those 30 days.

14         For that reason, we think that we're not -- for both

15   of those reasons, both because our clients haven't seen any

16   discovery and because some of the reports of investigation may

17   be coming later, we do not think we're in a position to

18   evaluate motions and represent to the Court which motions we

19   will file until sometime in early February.  That is why we

20   suggested the date of February 10th, 60 days out from today.

21         **THE COURT:**  That would be like a status conference.

22   But you would then be in a position to identify motions you

23   want to bring.  You can set a schedule; probably even a trial

24   date.

25         **MR. SABELLI:**  I don't know about a trial date.  I

1   think we'll be in a position -- assuming that we have the

2   discovery that we've been promised and that the government has

3   been working to give to us, assuming we have that discovery in

4   a form that we're able to use it and share it with our clients,

5   we think we'll be able to have evaluated the possibility of

6   filing motion dates and telling Your Honor which dates will be

7   workable for motions.

8            With respect to trial, I can't make that commitment

9   because we don't know what investigation will be necessary.

10  And that's another component that --

11           **THE COURT:**  Of course, we'll address that on the

12  10th.  And I'm not saying yes or no to that, but here's what

13  I've found.  If you leave it to the lawyers to tell me when the

14  trial date will be, they always say, We're not in the position

15  to say anything on that until we know everything.

16           Then with a case this big, we'll never get all the

17  lawyers to agree to a date.  So we need to look out far enough

18  and say reserve -- that we just pick a date that's fairly far

19  out and say reserve that date.  Then we do our best to meet it.

20  If we can't meet it, then we have to do contingencies.  That's

21  my theory.

22           You might convince me on the 10th, if it's too early

23  to pick a trial date.  I've learned the hard way, the longer

24  you delay in setting a trial date, the harder -- a case this

25  big, think about the odds of getting everyone to agree on a

1  trial date.

2          **MR. SABELLI:**  Well, that will be hard, Your Honor.

3  If we're in a position, either as a group or individually,

4  where we think our clients' interests require setting a trial

5  date on an expedited schedule, we'll do that.

6          Most of these folks are in custody, so we have an

7  interest in trying to move it along when we can get the

8  investigation done, when we have discovery, when we've been

9  able to work it with our clients and prepare motions.

10         So we're on the same page in that respect, Your

11  Honor.  We don't want to delay this thing unnecessarily.  We

12  hope to be in a position to set a trial date on February 10th.

13  But until we have the discovery and can access it, I cannot

14  represent that on behalf of all of our folks who will be in a

15  position to do that.

16         **THE COURT:**  I know you're not.  And I'm not either.

17  But I'm saying I might do it depending on how -- what comes

18  down on the 10th.

19         I'm going to say to the government, again, please,

20  please, do the discovery.  And be thorough.

21         **MR. LEUNG:**  We will do so, Your Honor.

22         **THE COURT:**  Do we have local police reports as part

23  of your discovery?

24         **MR. LEUNG:**  We do, Your Honor.

25         **MS. GWINN:**  Yes, sir.

1        **THE COURT:**  Do we have that same issue about

2   redactions, or does that involve --

3        **MR. LEUNG:**  There are redactions needed in the local

4   police reports as well.

5        **THE COURT:**  Well, you all do your best to work out

6   something that is fair to the defendants.

7        **MR. LEUNG:**  Certainly, Your Honor.

8        **MR. SABELLI:**  Your Honor, there is an issue I want to

9   put on the Court's radar, that we can't resolve today, but I

10  think we may be coming back and asking the Court for some

11  guidance on.  And that is how to provide these materials to our

12  clients who are now in custody.

13       We'll be working with the marshals, we'll be working

14  with the particular housing facilities, the jails.  But we're

15  not sure yet how we're going to work out dissemination of

16  materials within the jails.

17       So that may be something that we're coming to the

18  Court for guidance on within the next month.  And, of course,

19  that's a steppingstone to preparing motions.

20       **THE COURT:**  How do you normally do it?

21       **MR. SABELLI:**  Depends on the jail and it depends on

22  the material.  And it depends on the government's particular

23  interest in the case.

24       In this case, we have about 250 recordings.  It's not

25  a wiretap case, but they are what the government calls

1   consensually-monitored wires.  And so we're going to have to

2   provide those in a format that's -- that the clients are able

3   to listen to in custody.

4           In addition, there are documents which are currently

5   in paper form or in electronic format, and we have to work with

6   the housing facilities, with the jails, to see whether or not

7   they can be provided either in paper, in a library form, or in

8   some sort of electronic format through computers.  And we're

9   working on that.  We anticipate being able to work that out.

10          So I don't necessarily want to pull the Court into

11  that debate now, but that may take some time to effectuate

12  because there's nothing set up, for example, with the County

13  where the majority of these folks are.

14          So that may take two or three weeks or even more for

15  North County to facilitate that, assuming we can reach an

16  agreement with them.

17          **THE COURT:**  I don't have an answer.  Thank you for

18  letting me know it's there.  But if you need my help, I'll do

19  whatever I can do to solve the problems.  But, please, I ask

20  the lawyers to solve this problem and not bring it to me.  But

21  if you can't, I'll do my best.

22          **MR. SABELLI:**  We'll work it out, Your Honor.

23          **THE COURT:**  I will ask my marshals here, it's a big

24  group, you've got to help me let the defendants have access to

25  the lawyers and have access to the materials that are being

1   used against them so that they can prepare the case.

2          All right.  What else, Mr. Sabelli?

3          **MR. SABELLI:**  Your Honor, those are the only general

4   issues that we wish to raise, at this point, on behalf of the

5   group.  I don't know if any other individuals have an issue

6   they would like to raise.

7          **THE COURT:**  Anyone else want to bring up an issue?

8   How about waiving time?  What's the story there?

9          **MR. SABELLI:**  Your Honor, with respect to the folks

10  who have asked for the 60-day continuance until February 10th,

11  we are prepared to waive time under the Speedy Trial Act.

12         **THE COURT:**  Is that true?

13         (Multiple counsel simultaneously respond in the

14         affirmative.)

15         **THE COURT:**  All right.  The record will show that all

16  counsel for those defendants -- that's 20?  How many

17  defendants?

18         **THE CLERK:**  There will be 20 on that status on

19  February 20th.

20         **THE COURT:**  Those 20 defendants have agreed to waive

21  time.  How about for everybody else, though?

22         **MS. KEATING:**  As I think it's clear, Mr. Aristides

23  Carcamo did not wish to waive time, at this point.  I think

24  we've made that clear.

25         **MR. LEUNG:**  Your Honor, if I may add, there is only a

1  single speedy trial clock in this case.  So if the Court does

2  exclude time for most of the defendants, time is also excluded

3  for the other defendants, willingly or not, because there is

4  but a single speedy trial clock.

5          **THE COURT:**  That is true.  Isn't that right?  The

6  statute -- right now, everyone is joined in a single case.

7  There's no severance yet.

8          **MS. KEATING:**  Well, from Mr. Carcamo's perspective,

9  Your Honor, it's my understanding that all of the discovery on

10  his case has been provided to defense counsel.  Perhaps I'm

11  wrong about that.  He has his right to a speedy trial within 60

12  days.

13          The government chose to add him to this case,

14  although he's not charged in any conspiracy case.  His

15  co-defendant is charged only with him in the same single count.

16          Perhaps the best thing to do, at this point, is for

17  the government to agree and the Court to order that their case

18  be severed from the rest of the defendants, then, because they

19  don't wish to go for a year, as the Court has been explaining

20  to everybody, until their case is tried.

21          So, I do not wish to stipulate to a 60-day

22  continuance.

23          **THE COURT:**  All right.  You don't have to stipulate.

24  But here's what the Court is going to find, as on the present

25  record, the overwhelming majority of the defendants need the

1  extra time.  So it's true there's only one speedy trial clock

2  for the case, so the Court is going to exclude the time between

3  now and February 10th on the ground of effective preparation of

4  counsel.

5              **MR. SWANSON:**  And, for the record, Your Honor,

6  Mr. Montoya joins in Mr. Carcamo's request that time not be

7  excluded.

8              **MR. BALOGH:**  And Ms. Sosa joins in that request, as

9  well.

10             **THE COURT:**  I don't blame you for making that

11  objection, but I don't think it's a well-taken objection.

12             Now, if you were to make a formal motion to sever the

13  case, then I think you've got a stronger argument.  I don't

14  know the answer to that, but I would at least look into it.

15             Whether there's an argument you get your own speedy

16  trial clock once it's severed, that hasn't happened.  And I'm

17  not going to sua sponte -- I'm not going to just, without

18  knowing the reasons why they were all joined together, sua

19  sponte sever anybody.

20             If you want to bring a motion, bring it.  I can hear

21  it this month.

22             **MR. BALOGH:**  Thank you, Your Honor.  I just wanted to

23  make sure my objection was noted.  We will bring that motion if

24  we cannot resolve severance with the government.

25             **THE COURT:**  You don't have to wait until January 27.

1  You can bring a motion any time you want.

2          **MR. BOISSEAU:**  And that would be true on behalf of

3  Mr. Montes-Mayorga, who separately agrees to a speedy trial

4  waiver until January 27th.

5          **THE COURT:**  All right.  So your client, Mr. --

6          **MR. BOISSEAU:**  -- Montes-Mayorga.

7          **THE COURT:**  He stipulates to excluding time up to the

8  27th?

9          **MR. BOISSEAU:**  Yes.

10         **THE COURT:**  All right.  The Court is going to find --

11  well, actually, I've already found all the way up to February

12  10th, I'm going to exclude time.  But you stipulate up to the

13  27th?

14         **MR. BOISSEAU:**  Up to the 27th, but no further.

15         **THE COURT:**  Mr. Chazin, you do likewise?

16         **MR. CHAZIN:**  Yes, that's correct, up to the 27th.

17         **THE COURT:**  Okay.  I understand.  What more can I do

18  for you today?

19         **MR. LEUNG:**  I think that's more than enough, Your

20  Honor.

21         **THE COURT:**  All right.  We've got several hearing

22  dates set.

23         Now, there's a possibility, but only a possibility,

24  that for the next 20 -- on February 10th, I might come to the

25  Oakland courthouse, to make it a little easier on the marshals,

1  because this is huge commitment of resources.

2          And if I knew that there was a hearing room that

3  would be suitable at the North County jail, I would even

4  consider going there.  But I don't know what the details on

5  that are.  Somebody would have to check it out for me.

6          **MR. SABELLI:**  You might have a tough time getting a

7  contact visit there, Your Honor.

8          **UNIDENTIFIED COUNSEL:**  You don't want to go there,

9  Judge.  You don't want to go there.

10          (Laughter)

11          **THE COURT:**  Maybe not.  Maybe I can go to the Oakland

12  courthouse.

13          All right.  So are we done here?

14          **MR. LEUNG:**  Yes, Your Honor.

15          **MR. SABELLI:**  Your Honor, thank you very much.

16          Would that be at 2:00 p.m. on the 10th of February?

17          **THE COURT:**  Is that a Tuesday?

18          **MR. SABELLI:**  Yes, it is.

19          **THE COURT:**  2:00 p.m. it is.

20          **MR. SABELLI:**  Thank you, Your Honor.

21          **THE COURT:**  We're going to have to recess for a bit,

22  to clear the courtroom.

23          **MR. SABELLI:**  Thank you for your time, Your Honor.

24          (At 3:04 p.m. the proceedings were adjourned.)

25                        -   -   -   -

1

2

3                    **CERTIFICATE OF REPORTER**

4         I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Tuesday, February 2, 2010

8
                       s/b Katherine Powell Sullivan
9         _____

10        Katherine Powell Sullivan, CSR #5812, RPR, CRR
                       U.S. Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25