IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER RE MOTIONS TO DISMISS AND TO STRIKE RE THIRD SUPERCEDING INDICTMENT AND MOTION TO MODIFY FINAL PROTECTIVE ORDER** |
| IVAN CERNA, *et al.* | |
| Defendants. | |

## INTRODUCTION

This RICO gang prosecution commenced in October 2008. The third superceding indictment was filed on September 24, 2009. It alleged 60 counts against 29 defendants arising from alleged actions of the MS-13 gang. On March 15, 2010, a hearing was held on all motions by RICO and death eligible defendants directed at the third superceding indictment itself. This order addresses motions to dismiss and motions to strike counts of the third superceding indictment, as well as a motion to modify the final protective order.

**MOTIONS TO DISMISS/MOTIONS TO STRIKE**

Defendants Angel Guevara and Cruz-Ramirez move separately to strike Count 1 of the indictment. They contend that the Violent Crimes in Aid of Racketeering (VICAR) offenses with which they are charged that incorporate by reference the racketeering allegations contained in Count 1 must also therefore be dismissed. Additionally, they argue that the 120 overt acts enumerated in Count 1 should be stricken as prejudicial "surplusage."

Count 1 charges defendants with conspiracy to conduct the affairs of a racketeering enterprise — namely, the MS-13 gang — in violation of 18 U.S.C. 1962(d). A valid indictment for conspiracy under Section 1962(d) must allege that the conspirators intended to "further an

1 endeavor which, if completed, would satisfy all of the elements of a substantive criminal
2 offense . . . ." Here the substantive offense under Section 1962(c) has three predominant
3 elements: "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity."
4 *Salinas v. United States*, 552 U.S. 52, 62–65 (1997).

Defendant Cruz-Ramirez argues that the indictment fails to properly allege a racketeering "enterprise." Title 18, United States Code, Section 1961(4) defines a RICO "enterprise" as "any individual, partnership, corporation, association, or other legal entity , and any union or group of individuals associated in fact although not a legal entity." In this instance, the indictment alleges that MS-13 is an associated-in-fact enterprise.

For purposes of Section 1962(c), an associated-in-fact enterprise must have at least three structural features: (1) a purpose, (2) relationships among those associated with the enterprise and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 129 S.Ct. 2237 (2009). The Supreme Court has held that while the existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other, the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise "may in particular cases coalesce." *Boyle*, 129 S.Ct. at 2245. Therefore, "proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." *Id.* at 2247 (rejecting petitioner's proffered jury instruction that an enterprise must have "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages").

Defendant Cruz-Ramirez argues that the indictment fails to allege that MS-13 exhibits the necessary purpose and structure required of an associated-in-fact enterprise. This is incorrect. The third superceding indictment provides an extensive description of MS-13's purpose. The third superceding indictment specifically alleges that MS-13 "constituted an ongoing organization whose members functioned as a continuing unit that had a common purpose of achieving the objectives of the enterprise" (3rd Super. Ind. ¶ 13). These objectives included: (a) preserving and protecting the power, territory, reputation and profits of the

2

enterprise through the use of intimidation, violence, threats of violence, assaults and murder, (b) promoting and enhancing the enterprise and the activities of its members and associates, including, but not limited to, murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, extortion and other criminal activities, (c) keeping victims, potential victims and community members in fear of the enterprise and its members and associates through violence and threats of violence, (d) providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador and (e) providing assistance to other MS-13 members who committed crimes for and on behalf of the gang, to hinder, obstruct and prevent law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders (*id.* ¶ 14).

The third superceding indictment also describes at length the organization of the gang and the relationships among its members. It alleges that MS-13 is a transnational gang with more than 10,000 members in El Salvador, Mexico, Honduras, Guatemala and the United States (*id* ¶ 3). MS-13 allegedly spans the United States and is "organized into 'cliques,' that is, smaller groups operating in a specific city or region. MS-13 cliques sometimes worked together cooperatively to engage in criminal activity and assist one another in avoiding detection by law enforcement" (*id.* ¶ 8). MS-13 cliques "operated under the umbrella rules of MS-13" and had an organizational structure with leaders of individual cliques called "shot callers" or "*La Palabra*," above whom were leaders called "big homies" (*id.* ¶¶ 8, 10). The leaders of MS-13 resolved disputes between gang members, addressed organizational issues, and participated in significant gang decisions. Members could rise within the gang by committing criminal acts (*id.* ¶¶ 7, 10).

The third superceding indictment also sufficiently alleges longevity. While an enterprise must have enough longevity to permit its associates to pursue the enterprise's purpose, "nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence" *Boyle*, 129 S.Ct. at 2245. In the present matter, the third superceding indictment alleges that the enterprise existed "since at least the mid-1990s, and continuing up through and including the present" (3rd Super. Ind. ¶ 21). It enumerates 120

3

overt acts allegedly performed in furtherance of the conspiracy between 1995 and 2009 (*id.* at ¶ 27).

These allegations are sufficient to allege that MS-13 is an associated-in-fact enterprise for purposes of Section 1962. Defendant Cruz-Ramirez's motion to strike Count 1 on this ground is **DENIED**.

Defendants Cruz-Ramirez and Guevara also argue that the indictment fails to properly allege a pattern of racketeering to support a substantive offense under Section 1962(c). A pattern of racketeering activity is at least two racketeering acts that have a relationship to each other and that pose a threat of continued criminal activity. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535–36 (9th Cir. 1992). Conduct forms a pattern if it consists of criminal acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics. Sporadic activity or widely separated and isolated criminal activity does not form a pattern of racketeering activity. The crux of defendants argument is that the indictment fails to allege that the overt acts are sufficiently connected to constitute a pattern.

Defendants' argument is unavailing in the first instance for the simple fact that they are not actually charged with a substantive violation of Section 1962(c). Instead, they are charged under Section 1962(d) with conspiracy to "further an endeavor which, *if completed*, would satisfy all of the elements of" a violation of Section 1962(c). For purposes of Section 1962(d), it suffices that the indictment alleges that defendants adopted the *goal* of furthering or facilitating the criminal endeavor. It makes no difference that the substantive offense under Section 1962(c) requires two or more predicate acts. *Salinas v. United States*, 522 U.S. 52, 65 (1997). Indeed, a conspiracy conviction may be sustained even where the goal of the conspiracy is impossible. *United States v. Fiander* 547 F.3d 1036 (9th Cir. 2008). Here, the indictment sufficiently alleges that defendants adopted the goals of MS-13 (3rd Super. Ind. ¶ 23–26). Defendants' motion to strike Count 1 on this ground is therefore **DENIED**.

After having complained earlier in the case that the government had pled too little detail, they now move to strike the 120 overt acts alleged as part of Count 1 as "surplusage." Federal

4

Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." "The purpose of a motion to strike under Fed.R.Crim.P. 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988). Defendants argue that none of the overt acts are racketeering acts or racketeering predicates. They assert that therefore the overt acts implicate them in criminal conduct with which they are not charged and thereby prejudice them.

Defendants are incorrect. A motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. The overt acts listed in Count 1 are explicitly alleged to be acts taken by defendants "[i]n furtherance of the conspiracy and to achieve the objectives thereof" (3rd Super. Ind. ¶ 27). They are not described in inflammatory language. Defendants cannot show that on their face, the overt acts alleged in Count 1 are prejudicial.

Overt acts 3 and 4 allege that on or about July 26, 1996, defendant Guevara and others fought with a group of people and that defendant Guevara shot and wounded six people. Defendant Guevara argues that these acts should be struck on the grounds that they cannot constitute racketeering acts against him because they took place when he was only 16 years old. It is true that the Federal Juvenile Delinquency Act, 18 U.S.C. 5031, *et seq.*, provides that federal courts have no jurisdiction over certain prosecutions for acts of juvenile delinquency unless the cases have been certified for prosecution by the Attorney General or his specified representatives, and no such certification has been lodged in this case. However, conspiracy is a continuing crime, and the Juvenile Delinquency Act does not apply to a defendant who became involved in a conspiracy while a minor but whose conspiracy activity continued after he turned 18. *United States v. Baker*, 10 F.3d 1374, 1419 (9th Cir. 1993) (*overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000)). While defendant cannot be held liable for pre-majority conduct, such conduct is relevant to put post-majority conduct in context. Here, defendant Guevara is alleged to have continued with conspiracy activity after his

5

eighteenth birthday. Thus, the alleged overt acts which involve his activities as a minor are relevant to the charges against him.

For the foregoing reasons, defendants' motions to strike the overt acts from the third superceding indictment are **DENIED**.

Finally, defendants Cruz-Ramirez and Guevara move to dismiss the VICAR counts in the indictment on the grounds that they incorporate the racketeering allegations of Count 1. Because their motion to strike those racketeering allegations is denied, defendants' motion to strike the VICAR counts is also **DENIED**.

\* \* \*

Defendant Cruz-Ramirez moves to dismiss allegedly multiplicitous counts as violations of the Double Jeopardy Clause of the Fifth Amendment. He argues that Count 1, the RICO conspiracy charge, 18 U.S.C. 1962(d), is multiplicitous with the VICAR conspiracy charges in Count 2 (conspiracy to commit murder in aid of racketeering) and Count 3 (conspiracy to commit assault with a dangerous weapon in aid of racketeering), 18 U.S.C. 1959. He also contends that Counts 10 and 13, murder in aid of racketeering, 18 U.S.C. 1959, are multiplicitous with the conspiracies charged in Counts 1–3.

When an indictment alleges conspiracies in two counts under two separate statutes, it does not suffer from multiplicity if each count requires proof of an additional fact that the other does not. *Albernaz v. United States*, 450 U.S. 333, 339 (1981) (test derived from *Blockburger v. United States*, 284 U.S. 299 (1932)). Defendant Cruz-Ramirez relies on *United States v. Gardner*, 417 F.Supp.2d 703 (D.Md. 2006), another RICO gang case where the defendant was charged with, *inter alia*, a RICO conspiracy and conspiracy to commit murder in aid of racketeering activity. In *Gardner*, the district court applied *Blockburger* and *Albernaz* to dismiss two counts, each alleging conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. 1959(a), because they were multiplicitous of another count alleging a racketeering conspiracy in violation of 18 U.S.C. 1962(d). *Id.* at 706.

Defendant fails to note that this same issue has been addressed by the Ninth Circuit. In *United States v. Luong*, 393 F.3d 913, 916 (9th Cir. 2004), the court held that so long as the

6

elements of a predicate conspiracy offense are distinct from the overarching RICO conspiracy, the indictment is valid. That is true here as well. The racketeering-conspiracy statute criminalizes conspiring to conduct an enterprise that engages in a pattern of racketeering activity by committing two or more predicate acts. *Ibid.* It does not require proof of any of the particular violent crimes that underlay the murders, conspiracies to commit murder, or conspiracies to commit assault with a dangerous weapon that are alleged in the other counts. Conversely, the counts alleging violent crimes in aid of racketeering do not require proof of an agreement to commit two or more predicate acts, as do the conspiracy counts. For these reasons, Count 1 is not multiplicitous with Counts 2 or 3, and Counts 10 and 13 are not multiplicitous with Counts 1, 2 or 3. Defendant Cruz-Ramirez's motion to dismiss multiplicitous counts is **DENIED**.

## MOTION TO MODIFY PROTECTIVE ORDER

Defendant Luis Herrera moves to clarify and modify the protective order. A final protective order (Dkt. No. 630) was entered in this action pursuant to Rule 16(d)(1) based on the government's *ex parte* showing that if the locations and identities of key cooperating witnesses, victims, and their families were known, their safety would be at risk. In May 2009, the government moved for a protective order for witness security pursuant to Rule 16(d)(1), supported by a sealed declaration of Assistant United States Attorney W.S. Wilson Leung. In June 2009, an order granted the government's motion and a tentative protective order was issued patterned after the protective order issued in an earlier RICO gang prosecution, *United States v. Fort*, 05-00167 WHA. After additional briefing from the parties raising objections and suggestions to the tentative protective order, the final protective order was issued on September 16, 2009, to address the extent to which otherwise discoverable materials could (or could not) be redacted to keep defense teams from learning of civilian witnesses' identities and locations.

The final protective order restricts the disclosure of information that would tend to reveal the identities or locations of particular civilian witnesses as to whom the government made an *ex parte* showing of danger. Additionally, restrictions on the disclosures of protected witnesses' identities to defendants are set to expire before their trials, with the exception that

7

specific locator information which defendants do not need for an effective defense will never be disclosed. Defense teams also have the option to choose not to opt in to the protective order and pursue their defense without the benefit of receiving protected information from the government under the protective order. Defense counsel that agree to be bound by all the terms of the protective order are deemed "eligible" to receive unredacted protected information in discovery from the government pursuant to a set timetable. Counsel that do not opt in to the protective order are deemed "ineligible." To date, no defense counsel have opted in to the protective order.

Defendant Herrera's motion for clarification and modification of the protective order focuses on the treatment of "protected information" under the protective order. The final protective order defines "protected information" as "identifying information of potential trial witnesses, any locator information, and any information learned about them *from any source*" (Dkt. No. 630 at 2). The final protective order later states that "[i]f any ineligible counsel, through inadvertence or otherwise, receives any protected information as to which they are ineligible, then such counsel must report said incident immediately to the Court and the government" (Dkt. No. 630 at 8). Defendant Herrera asserts that it is unclear under these two provisions whether defense counsel who have not opted in to the protective order are required to report the substance of any information they learn about any potential trial witness to the government and the Court.

No such requirement was intended. The provisions at issue were directed at a scenario where information provided to an eligible defense team fell into the hands (inadvertently or otherwise) of an ineligible defense team. Because no defense counsel have opted in to the protective order, this scenario is inapplicable at present in this action. Defendant Herrera's motion for clarification or modification is therefore **GRANTED** to this extent: counsel who opt out of the protective order in place now are not required to turn information over to the government or the Court.

Defendant Herrera additionally states that he wants to submit the testimony of Professor Ellen Yaroshefsky "to further inform the Court of the problems defense counsel face in carrying

out their ethical duties and their advocacy roles" in the face of the existing protective order. The Court continues to believe that defense counsel have a legitimate interest in receiving early unredacted discovery as soon as practicable, and that the government has a legitimate interest in protecting witnesses. The Court encourages all counsel to review the final protective order and submit a revised draft that would in their view appropriately balance these two interests. Merely submitting critiques of the existing protective order without an alternative proposal would be unhelpful. In the meantime, the Court stands by the existing protective order as a fair and reasonable accommodation of the two interests, especially given the disclosures the government will eventually have to make under other scheduling orders herein.

**IT IS SO ORDERED.**

Dated: April 9, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE