MARTIN SABELLI (164772)
Law Offices of Martin A. Sabelli
149 Natoma St., 3rd Fl.
San Francisco, CA 94105
Tel: (415) 284-9806
Fax: (415) 520-5810
msabelli@comcast.net

Attorney for
GUILLERMO HERRERA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 08-0730 WHA |
| Plaintiff, | |
| vs. | **GUILLERMO HERRERA'S MEMORANDUM REGARDING ADMISSION OF TRANSCRIPTS** |
| GUILLERMO HERRERA, *et al.*, | |
| Defendants. | |

GUILLERMO HERRERA submits this memorandum to address two issues related to, but not addressed by, recent filings regarding the proprietary of substituting English-language transcripts for Spanish-language audio recordings. Docket No. 4136; Docket No. 4144; Docket No. 4146. In these filings, neither Moris Flores nor the government addressed two issues which Mr. Herrera submits are of fundamental importance.

First, an audio recording should not be treated as if it were documentary evidence to be released to the jury for unsupervised consideration during deliberations. Rather, the transcript should be treated as an audio recording would be treated; it should be introduced by the proponent of the evidence in its case-in-chief and made available to the jury during deliberations as an audio recording would be – upon request to the Court.

Second, a witness should not be able to inject his or her conclusions into the evidence, whether it be a recording or a transcript. This Court, for example, would not permit Jaime

1

1   Martinez to inject speaker designations – through voice-over – onto an audio tape which has

2   been admitted into evidence.   Nor should it permit the government to inject speaker

3   designations into a transcript which purports to be a faithful reflection of an audio recording

4   and is admitted as evidence based upon that premise.   To do so would be the equivalent of

5   authorizing hybrid evidence; that is evidence which synthesizes the words spoken on an audio

6   recording with the testimony of a government witness regarding the identity of the speakers.

7   This type of evidentiary hybrid would serve the strategic and organizational purposes of the

8   prosecution at the expense of the integrity of the evidence.   For this reason, this practice would

9   violate Mr. Herrera's right to due process and effective assistance of counsel, and in certain

10  circumstances, his confrontation rights.

11          Mr. Herrera expects the government to argue that this filing is "late."   In this regard,

12  Mr. Herrera observes that no transcripts have been moved into evidence recently -- apart from

13  the transcript submitted weeks ago during the testimony of Abraham Martinez.   Mr. Herrera

14  also notes that the issues he raises in this pleading have not yet been addressed by the Court or

15  the parties.   Finally, given the timing of the government's notice, which has already raised a

16  judicial eyebrow, Mr. Herrera has joined these issues well before the government's intended

17  date to admit transcripts through Jaime Martinez (Monday, May 10, 2011).

18

19     **I.       A Transcript of an Audio Recording Should Be Treated as the Audio
               Recording Itself Should Be Treated.**
20

21          A transcript of an audio recording should not be submitted to the jury for deliberations

22  as if it were documentary evidence.   Rather, the transcripts – wholly derived form audio

23  recordings – should be treated in all respects as if they were recordings including the manner of

24  admission and the availability during deliberations.

25          Audio recordings are, to borrow the government's preferred mode of expression,

26  "typically" played during the case-in-chief of the proponent of the evidence.   Similarly, a

27  transcript based upon an audio recording should be published during the proponent's case-in-

28  chief.

1    With respect to deliberations, audio recordings are made available to the jury for

2    deliberations upon request of the jury.  If a jury requests an opportunity to review a recording,

3    and the Court grants that request, the audio recording is played for the jury in open court with

4    the defendant present.  *See United States v. Felix-Rodriguez*, 22 F.3d 964, 966-67 (9th Cir.

5    1994) ("a defendant has a right to be present when tape-recorded conversations are replayed to

6    a jury during its deliberations.)" citing *United States v. Kupau*, 781 F.2d 740, 743 (9th Cir.

7    1986) (internal quotations omitted).

8    The same process should be employed for the reading of transcripts derived from

9    Spanish-language recordings.  The transcription is, in effect, an animal of necessity, and there

10   is no reason to treat it differently (better) than the actual recording.  An audio transcript, just

11   like the recording from which it is derived, should only be available to the jury upon request.

12   Mr. Herrera, moreover, has the right to be present for the 're-playing' of this evidence.  *Felix-*

13   *Rodriguez*, 22 F.3d 964 at 967 (replaying a tape for the jury during its deliberations "is

14   properly viewed as a stage of the trial at which the presence of the defendant is required and

15   this right cannot be waived by counsel.").

16   Significantly, the cases cited by the government in Docket 4136 and Docket 4146

17   involved stipulations to the accuracy of the transcripts, failures to object, or tacit agreement to

18   the contents of the transcriptions. *See e.g.*,  *United States v. Franco*, 136 F.3d 622 (9th Cir.

19   1998) (no abuse of discretion in sending the transcripts to the jury room where there was "no

20   cognizable dispute concerning the accuracy of the translation."); *United States v. Fuentes-*

21   *Montijo*, 68 F. 3d 352, 355 (9th Cir. 1995) (failure of counsel to specifically challenge

22   inaccuracies "left [the court] with largely conclusory allegations of possible inaccuracy and no

23   indication that the court's ruling likely affected the jury's verdict.").

24   Unlike the cases cited by the government, Mr. Herrera does not stipulate to the

25   accuracy of the speaker designations or of the transcriptions.    More fundamentally, Mr.

26   Herrera submits that the transcriptions should be treated in the same way that the audio

27   recording would be treated; they should not be admitted as if they were documentary evidence

28

3

1   and they should not be corrupted by the hybridization of the actual recording with the

2   subsequent witness testimony.

3

4   **II.      Admission of the Transcripts as Evidence Would Require Redaction of the Designation of the Speakers.**

5

6   Mr. Herrera has serious due process concerns with speaker designations placed on the

7   transcripts themselves.   Concretely, even where the translations are not in dispute, the

8   identification of the speakers often are.  Unlike an audio recording, which does not reflect the

9   names of the speakers, the government's proposed transcripts are based upon the two-column

10  format which purports to identify the speaker in one column, and the translated transcription of

11  the audio in the other column.  The designation of the speakers in the first column is based

12  upon the testimony of government witnesses.  For this reason, a transcript which designates the

13  speakers alters the nature of the evidence itself by synthesizing the recorded evidence with

14  witness testimony.  Mr. Herrera objects to this kind of hybrid transcript because, quite simply,

15  the identification of a voice on the transcript proves a fact in dispute: the identity of the

16  speaker.

17  For this reason, should the Court permit admission of the transcripts to the jury, due

18  process requires that the speaker designations on the recordings be deleted.  By deleting the

19  speaker designations, the transcripts would more faithfully reflect the recordings which they

20  purport to reflect.[1]  Voice designations on a transcript would simply appear to prove a fact in

21  dispute contrary to due process and effective assistance of counsel.

22

23  [1]  Of course, any verbalized names which appear in the recording itself need not be redacted
because that is a part of the recording.  To clarify, the following would be impermissible only

24  to the extent that the names are identified in the left column:

| Speaker | Translation |
|---------|-------------|
| Clara:  | Hi David.   |
| David:  | Hi Clara.   |

25

26  The jury should only see the right column in a transcript, and not the left where the names are

27  identified – even if it is abundantly clear from the context who is who as in the above example.
An appropriate solution may be to have an anonymous designation in the left-hand column so

28  that the jury can more easily distinguish when different speakers are talking.  So, using the
same example as above, the resulting transcript would appear:

4

1

**CONCLUSION**

2      Transcripts of audio recordings should be treated in exactly the same manner as the

3   audio recordings from which they are derived.    The government should not be permitted to

4   derive an advantage, by injecting voice designations, or by admitting transcripts as if they were

5   documentary evidence, simply because the accused spoke Spanish to each other.

6

7

      Dated: May 4, 2011.                              Respectfully Submitted,
8

9

10                                                  _____/s/_____
                                                    MARTIN SABELLI
11                                                  Attorney for
                                                    GUILLERMO HERRERA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26      Speaker     Translation
        Voice 1:    Hi David.
27      Voice 2:    Hi Clara.
     This solution would avoid the due process issue raised by Mr. Herrera while providing the jury
28   with a means to distinguish when different individuals are speaking.